(90 App. Div. 239.)

### PEOPLE v. ST. CLAIR.

(Supreme Court, Appellate Division, First Department. January 22, 1904.)

1. DISORDERLY CONDUCT—STATUTES—CONSTRUCTION.

    Pen. Code, § 675, as amended by Laws 1891, p. 657, c. 327, provides that any person who shall, by any offensive or disorderly act or language, annoy or interfere with any person "in any place," or with the passengers of any public stage, railroad car, ferryboat, or other public conveyance, etc., shall be deemed guilty of misdemeanor. *Held*, that the words "in any place" were not limited or qualified by the places subsequently designated, but referred to any "public place."

2. SAME—APPLICATION OF STATUTES—PRIVATE DETECTIVES.

    Laws 1898, p. 1120, c. 422, § 2, as amended by Laws 1901, p. 1002, c. 362, licensing private detectives to engage in the business of furnishing or supplying information as to the personal character of any person or firm, or as to the character or kind of business and occupation of any person, firm, or corporation, and requiring such detective to give bond, does not relieve detectives so licensed from liability for violating Pen. Code, § 675, as amended by Laws 1891, p. 657, c. 327, prohibiting any person from annoying another by offensive or disorderly conduct in any public place.

3. SAME—CONSTITUTIONAL LAW—PRIVACY.

    Pen. Code, § 675, as amended by Laws 1891, p. 657, c. 327, prohibiting a person from annoying another in any public place by any offensive or disorderly act or language, and declaring such annoyance to constitute a misdemeanor, constituted a valid exercise of the legislative power, though there is no right of privacy at common law.

4. SAME.

    Where a private detective, without other justification, shadowed complainant openly from place to place for several days, keeping him constantly in sight, and insisted in his surveillance after complainant observed him, and on one occasion pointed complainant out to several people, and stated to them, "That is him now," which remark complainant overheard, such detective's acts justified a conviction of violating Pen. Code, § 675, as amended by Laws 1891, p. 657, c. 327, prohibiting any person from annoying another in any public place.

    McLaughlin, J., dissenting.

    Appeal from Court of Special Sessions.

    Lawrence H. St. Clair was convicted of disorderly conduct, in violation of Pen. Code, § 675, and he appeals. Affirmed.

    Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

    James W. Osborne, for appellant.
    Howard S. Gans, for the People.

    LAUGHLIN, J. The complainant, Frederick A. La Roche, was a manufacturer of electrical apparatus, and his place of business was at the corner of 13th and Hudson streets, in the city of New York. He acted as general sales agent and superintendent of the business. On the 3d day of April, 1903, the defendant was in the employ of Meechan's Detective Agency. On that day he was arrested by a police officer for following the complainant from place to place along the public streets and making inquiries concerning him, and annoying and interfering with him, and was tried on that charge. The people gave evidence tending to show that defendant had been following the complainant for four days; that he would station himself on the street corner opposite the complainant's office in the morning, and remain there, keeping an outlook toward the office, or toward complainant when on the walk, in front of the office, where he frequently transacted business; that when complainant came upon the street defendant would follow, in plain sight, wherever he went; that whenever complainant went into a restaurant for luncheon defendant would follow him in, sit at a table near by, and leave when complainant did, and resume his pursuit; that on the day of the arrest complainant departed from his principal place of business in an automobile to visit a branch office on 38th street, and the defendant followed on a bicycle, riding at his utmost speed to keep nearly up, and then, when complainant entered his branch office, the defendant watched for his return, and again in like manner followed the automobile back to the place from which it started, and, on seeing complainant reenter his place of business, dismounted and remained on the street corner, looking over as before; that the complainant observed that the defendant was watching and following him, and saw defendant

point him out to several people, and overheard him remark to them, "That is him now," at a time when complainant was endeavoring to transact business on the walk in front of his place of business; that this conduct on the part of the defendant disturbed the complainant's peace of mind, and interfered with his ability to transact business; that at times the defendant, when evidently in doubt concerning the complainant's movements, made inquiries of complainant's employés and others, and on these occasions would be observed pointing over toward complainant's place of business. The defendant did not attempt to speak to the complainant, or obstruct his passage upon the public streets or elsewhere; but he kept within from 10 to 200 feet, and usually nearer than 100 feet, and remained in plain sight. The defendant testified in his own behalf. He denied that he had followed the complainant prior to the day of the arrest, or that he made inquiries concerning him of any one, except the janitor of the building and one of complainant's employés. He assigned no reason for following complainant, except that he was instructed by the detective agency to go around to complainant's place of business and "look and see" what he was doing. According to the evidence presented in behalf of the people, however, the defendant had been following the complainant for several days, and in a manner that rendered it perfectly obvious to the latter. The complainant at every turn was confronted with the presence of the defendant in the immediate vicinity, and the inference is fairly justified that defendant became aware that the complainant had discovered his espionage, and thereafter continued his surveillance as before. By chapter 327, p. 657, of the Laws of 1891, section 675 of the Penal Code, as originally enacted (chapter 676, p. 177, Laws 1881) and amended in 1882 (chapter 384, p. 545, Laws 1882), was amended by adding thereto the following:

"Any person who shall by any offensive or disorderly act or language, annoy or interfere with any person or persons in any place, or with the passengers of any public stage, railroad car, ferry-boat, or other public conveyance, or who shall disturb or offend the occupants of such public stage, car, boat or conveyance, by any disorderly act, language or display, although such act, language or display may not amount to an assault or battery, shall be deemed guilty of a misdemeanor."

The charge upon which the defendant has been tried and convicted is for a violation of the provision of the section added by the amendment of 1891.

The appellant contends in the first place that the words "in any place" are qualified by the subsequent provisions of the statute, and that it was only designed to prohibit and punish acts committed in public stages, railroad cars, ferryboats, or other public conveyances, or "similar places." We are unable to agree with this construction. The words "in any place" undoubtedly have reference to a public place; and public stages, railroad cars, ferryboats, and other conveyances were doubtless specified to remove any question as to whether they were public places, and included in the words "in any place" preceding them in the statute. It does not appear whether the detective agency by which defendant was employed was licensed; but

since it is unlawful to engage in the business of a private detective
for hire or reward without a license (chapter 362, p. 1002, Laws 1901),
it should, perhaps, be presumed that the firm was duly licensed. It is
contended at the outset by counsel for appellant that licensed private
detectives are not subject to the operation of this section of the Penal
Code, even if otherwise it should be applicable to them. It is manifest
that the primary object of licensing private detectives, upon good
character satisfactorily shown, and requiring them to give a substan-
tial bond, is the protection of persons requiring such service, and af-
fording them redress in case of misconduct. The language of the
statute (section 2, c. 422, p. 1120, Laws 1898, as amended by chapter
362, p. 1002, Laws 1901) indicates that it was contemplated that such
licensed detectives or detective agencies might engage in the business
of "furnishing or supplying information, as to the personal character
of any person or firm or as to the character or kind of the business
and occupation of any person, firm or corporation." But this does not
indicate a legislative intent to license or permit such detectives or their
employers, who do not require a license (section 4, c. 422, p. 1121,
Laws 1898), to annoy or interfere with citizens or others. Moreover,
the provisions of the Penal Code now under consideration were enacted
after the enactment of the first statute providing for licensing private
detectives, and if the Legislature intended to exempt them from its
operation it would have so provided. As we view it, the Legislature
intended to prohibit one person from, by any offensive or disorderly
act or language, annoying or interfering with another in a public
place. Two things must occur to constitute the crime. One of these
relates to the conduct of the accused, and the other to the effect of
such conduct upon the complainant. There must be an annoyance to
or interference with some person in a public place by act or language
which is either offensive or disorderly. It is clear that if one person,
without lawful excuse, persists in talking to or walking with another
with whom he is not acquainted, this may be offensive or disorderly,
and it may constitute an interference with or annoyance to the person
accosted, within the prohibition of the statute. Such are doubtless
the cases that commonly arise under the statute; but the scope of the
statute is broad, and necessarily so. There can be no doubt that it
was within the constitutional province of the Legislature to declare
such conduct as is prohibited a misdemeanor, even though there be
no right of privacy at common law, as is claimed to be the effect of
the decision in Roberson v. Rochester Folding Box Co., 171 N. Y.
538, 64 N. E. 442, 59 L. R. A. 478, 89 Am. St. Rep. 828; yet it does
not follow that the Legislature is powerless to prohibit conduct such
as it has here declared to be a misdemeanor. The Legislature fore-
saw that it would be impossible to specifically enumerate the various
acts that would constitute the offense. Consequently, whether, in a
particular case, the statute has been violated, depends upon the nature
of the conduct of the defendant and its effect upon the complainant.
Of course, the statute does not prohibit the officers of the law from
the full performance of their duties in detecting and punishing crime,
nor does it prohibit them, or private detectives or others, from ex-
ecuting or serving any lawful process, notice, or other paper, or from

making any lawful inquiries or investigation concerning the conduct of any individual, firm, or corporation. But when one person, even though he be a licensed private detective, or an employé of one so licensed, for purposes of his own, or upon employment for hire, persists in following another for the mere purpose of ascertaining and reporting where he goes and what he does, and dogs his steps about the public streets and places, keeping him constantly in sight, or, if he enters a building, following him in or waiting outside until he reappears, and does this in such a manner that the person followed, while being followed, observes it, and after this becomes evident to the defendant he still insists in his surveillance, it may fairly be inferred from these facts that the person followed has been annoyed, and, in the absence of legal justification, that the person following him has committed an offensive or disorderly act, causing such annoyance within the letter and the fair intent and meaning of this statute. It cannot, of course, be authoritatively decided upon the record now before us—which discloses no attempt to justify, except the mere fact of employment by a private detective agency—what facts would constitute a justification. If the purpose were to execute or serve a civil process, or to serve a private notice or paper, that could scarcely justify such surveillance, for the service would be made as soon as the identity of the party is discovered, and a reasonable opportunity afforded therefor. If the purpose were to report on one's character, habits, or associations, or to obtain evidence to be used in a civil action or proceeding, a suspicion as to what might be discovered by such espionage would be no justification for conduct annoying an individual in a manner that might lead to a breach of the peace. If a man may be followed thus openly, so may any woman or girl, and her character might be thereby seriously affected, without redress civilly or criminally. Skillful private detectives should be able to perform any lawful services for which they may be employed without following a person in this open manner and necessarily annoying him; and if they cannot, they must, when they become aware that their espionage is discovered, desist or run the risk of a criminal prosecution.

We are therefore of opinion that the facts justified the conviction of the defendant of a violation of this section of the Penal Code, and that the judgment should be affirmed.

VAN BRUNT, P. J., and PATTERSON and O'BRIEN. JJ., concur.

McLAUGHLIN, J. (dissenting). The rule of law to be applied to the facts in this case is the one which, in my opinion, should be applied in People v. Weiler (argued on the same day) 85 N. Y. Supp. 1140. Here, it is true, it does not appear, as in the Weiler Case, that the defendant was shadowing the complainant for the purpose of locating him, to the end that a subpœna to appear in a criminal proceeding might be served, and it is equally true that it does here appear that on one or more occasions the defendant pointed out the complainant and said, "That is him now," but such statement was made, so far as ap-

pears, in a quiet and orderly manner. It did not, nor did the other acts of the defendant, in my opinion, constitute, within the meaning of the statute, disorderly or offensive acts, nor make the defendant guilty of a crime simply because the complainant was annoyed.

The reasons assigned by me for the reversal of the judgment in the Weiler Case are equally applicable to the question here presented, and for such reasons I vote for a reversal of the judgment.