STATE OF CONNECTICUT *v.* DAVID E. AVNAYIM

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 1-3102

Argued April 19—decided July 9, 1962

*David M. Wise,* of Stamford, for the appellant (defendant).

*William L. Tierney, Jr.,* prosecuting attorney, for the appellee (state).

PRUYN, J.   From his conviction of the crimes of disorderly conduct, in violation of § 53-175 of the

General Statutes, and of resisting arrest, in violation of § 53-165, the defendant has appealed, assigning as error the conclusion of the trial court that on all the evidence he was guilty of both crimes beyond a reasonable doubt and that § 53-175 is constitutional.

Since the defendant has assigned as error that he was not, upon all the evidence, guilty beyond a reasonable doubt of each of the two crimes mentioned above, there was no finding by the trial court. Cir. Ct. Rule 7.31.1. Accordingly, this court has examined the entire evidence.

The determination of the credibility of the witnesses and the weight to be given to the testimony of each witness is the exclusive function of the trial court, and with its opportunity to observe the witnesses on the stand its conclusion is rarely disturbed. *State* v. *Coulombe,* 143 Conn. 604, 607. It is not the function of this court to substitute its judgment on the facts for that of the trial court.

From the testimony, some of which was conflicting, the court could have reasonably found the following facts. The defendant was traveling south on West Avenue in Stamford and was involved in a collision, in the intersection of West Avenue with Waverly Place, with a car which was being driven easterly on Waverly Place by one Kutnik. A Stamford police officer, Williams, had been traveling north on West Avenue and was stopped for a red light at the intersection at the time of the accident. The light was green for Kutnik. Officer Williams summoned the police department accident car, which was operated by Officer Dujack, who investigated the accident and questioned Kutnik and the defendant. The defendant became belligerent and boisterous, was sarcastic and evasive in his answers, kept shouting, "None of your business; you are here only

to take down numbers; I can say what I want," and argued, insisting loudly that the light was green in his favor. A crowd of sixty to seventy persons had gathered. Both officers warned the defendant to quiet down and keep his voice down and to answer questions decently or he would be arrested for disorderly conduct. The defendant kept on shouting and repeating his statements, and thereupon Officer Dujack arrested the defendant for disorderly conduct and told him to get into Officer Williams' patrol car. Since the defendant refused and said he was not going to go and that no one was going to put him in the car, Officer Dujack had to take him forcibly and put him in the car. The defendant did not menace, threaten or strike the police officers, nor was it necessary to use handcuffs, nor for Officer Williams to assist Officer Dujack. Eventually, Officer Dujack obtained from the defendant the information necessary for the accident report.

There was considerable testimony as to the operation of the traffic light, and the court held that the state had failed to prove beyond a reasonable doubt that the light was red against the defendant. Therefore, the court found the defendant not guilty of passing a red light.

Section 53-175 of the General Staatutes provides as follows: "Any person who, by offensive or disorderly conduct, annoys or interferes with any person in any place . . . , although such conduct may not amount to an assault or battery," shall be punished. The crime of disorderly conduct is purely statutory; it did not exist at common law, and, therefore, the basic elements of the crime must be found in the language of the statute. *State* v. *Reynolds,* 243 Minn. 196. The term "disorderly conduct" signifies generally "any behavior that is con-

trary to law, and more particularly such as tends to disturb the public peace or decorum, scandalize the community, or shock the public sense of morality." Black, Law Dictionary (3d Ed.). "The word 'disorderly' is a word that is almost self-explanatory as it is ordinarily used. When used in a legal sense it has a well-established meaning relating to the public peace and good order. When the term is used in relation to public offenses it means a situation over which the individual has no control is not being regulated by the restraint of morality; that compliance with the restraints of good order and law is lacking. 'Disorderly conduct' generally means some act which tends to breach the peace or to disturb those people who may see or hear it. For a person to be guilty of disorderly conduct the public or some member thereof must be disturbed." *State* v. *Reynolds,* supra, 199. There are two elements which must concur in order to constitute the crime: the conduct of the accused and the effect of such conduct on a member of the public. There must be an annoyance to or interference with someone in a public place by conduct which is offensive or disorderly. *People* v. *St. Clair,* 90 App. Div. 239 (N.Y.).

The statute is not intended to prevent a person from protesting his innocence or from questioning a police officer or complaining against a policeman's unlawful actions, but he must do so in a quiet and respectable way and not in such a way as to create a commotion or disturbance. *Thompson* v. *Louisville,* 362 U.S. 199, 206; *People ex rel. Koehler* v. *Magnes,* 187 N.Y.S. 913 (Gen. Sess.); 27 C.J.S. 519, § 1 (4) (f). Although the defendant was not obliged to answer the questions asked by the police and could not be legally arrested for refusing to do so, his belligerent and boisterous conduct, apart from his right to refuse to answer questions and apart from his right to protest his innocence, was such as

to create a commotion or disturbance and thus render him liable to arrest for disorderly conduct.

The defendant argues that § 53-175 is unconstitutional because it fails to set up any definite standards, that the words "offensive" and "disorderly" are vague and not sufficiently explicit so that one can know what conduct is prohibited, and that these words may have different meanings to different people. He, however, does not specify, as he should do, the provision or provisions of the United States or Connecticut constitutions on which he relies. Although we are not obligated to speculate as to what these provisions are, we shall consider the claim of unconstitutionality. This claim would have to be based on a deprivation of due process in violation of the fourteenth amendment to the constitution of the United States and § 9 of article first of the constitution of Connecticut. No Connecticut authority on the question of the constitutionality of § 53-175 has been called to the court's attention, nor has the court been able to discover any. The New York statute, which is practically identical with § 53-175, provides: "Any person who shall by any offensive or disorderly act or language, annoy or interfere with any person in any place . . . shall be deemed guilty of a misdemeanor." N.Y. Pen. Law § 720. This statute has been held constitutional by the New York courts. *People* v. *Harvey*, 307 N.Y. 588; *People* v. *St. Clair*, 90 App. Div. 239, rev'd on other grounds, 179 N.Y. 578. In the *St. Clair* case, the Appellate Division said (p. 243): "[B]ut the scope of the statute is broad and necessarily so. There can be no doubt that it was within the constitutional province of the Legislature to declare such conduct as is prohibited a misdemeanor . . . . The Legislature foresaw that it would be impossible to specifically enumerate the various acts that would constitute the offense. Consequently, whether in a particular case the statute

has been violated depends upon the nature of the conduct of the defendant and its effect upon the complainant." In the *Harvey* case, the Court of Appeals said (p. 592): "Common sense ... [dictates] that language or conduct is to be adjudged to be disorderly, not merely because it offends some supersensitive or hypercritical individual, but because it is, by its nature, of a sort that is a substantial interference with (our old friend) the reasonable man." We agree with the New York courts and accordingly hold § 53-175 to be constitutional.

Section 53-165 of the General Statutes provides: "Any person who obstructs, resists or abuses any officer concerned in the administration of justice while in the execution of his office" shall be punished. The word "resist" has not been defined in any reported Connecticut case that counsel and the court have been able to discover. Bouvier, Law Dictionary (3d Rev.), defined it as follows: "To oppose by direct, active, and quasi-forcible means." The word is derived from the Latin, its etymological meaning being "to stand against" or "to withstand." It is the opposition of force to force; threats unaccompanied by force or mere words do not constitute resistance; the gist of the offense is personal resistance to the officer, that is, personal opposition to the exercise of official authority or duty, by direct, active and in some degree forcible means. There must be actual opposition or resistance, making necessary, under the circumstances, the use of force. *State* v. *Welch,* 37 Wis. 196, 201; see also *In re Boyd,* 228 F. 1003, 1004; *Powell* v. *State,* 152 Ga. 81. Refusal to obey and surrender when arrested, so as to require the officer to use force, is resistance. *United States* v. *Resaba,* 1 Philippine 311. The state based its prosecution in the case before us on the element of resisting arrest; the elements of obstructing and abusing were not argued and are not before us; further-

more, there is no evidence in respect to obstructing or abusing the officer.

We cannot say as a matter of law that there was not sufficient evidence to justify the court's conclusion that the defendant was guilty of the two crimes charged beyond a reasonable doubt.

There is no error.

In this opinion KOSICKI and GEORGE, Js., concurred.