STATE OF CONNECTICUT *v.* AURELIA TOWNSEND

CIRCUIT COURT                                    SIXTH CIRCUIT
                                          FILE NO. CR 6-67006

Memorandum filed August 20, 1969

*Paul M. Foti* and *Sherman Drutman,* assistant prosecuting attorneys, for the state.

*Catherine G. Roraback,* of New Haven, for the defendant.

JACOBS, J. The defendant filed a motion to quash the second count of the information, charging her with the offense of disorderly conduct in violation of § 53-175 of the General Statutes.[1] The basis of the motion is that the "statute on its face . . . fails to establish a precise standard for the determination of the guilt or innocence of one accused thereunder and fails to define with sufficient clarity what act or acts are prohibited thereunder and thus is unconstitutional as being in violation of §§ 8, 9 and 10 of article first of the Constitution of the State of Connecticut and the provisions of the Fourteenth Amendment to the Constitution of the United States." In other words, the claim is made that the statute contains no ascertainable standard

---

[1] "Sec. 53-175. DISORDERLY CONDUCT. Any person who, by offensive or disorderly conduct, annoys or interferes with any person in any place or with the passengers of any railroad car, ferry boat or other public conveyance, or who disturbs or offends the occupants of such railroad car, ferry boat or public conveyance, by any disorderly conduct, although such conduct may not amount to an assault or battery, shall be fined not more than two hundred dollars or imprisoned not more than six months or both."

of guilt. "A motion to quash is in effect a demurrer to the information." *State* v. *Barles,* 25 Conn. Sup. 103, 106; 41 Am. Jur. 2d, Indictments and Informations, §§ 284, 286.

Due process "requires that a penal statute 'be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties.'" *State* v. *Hurliman,* 143 Conn. 502, 509. In *United States* v. *Woodard,* 376 F.2d 136, 140, the court said, citing *United States* v. *Petrillo,* 332 U.S. 1, 8: "The Constitution does not require impossible standards of specificity in penal statutes. It requires only that the statute convey 'sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'" Explicit enunciation of the due process requirement was expressed in *Connally* v. *General Construction Co.,* 269 U.S. 385, 391, where the court said: "That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." See *State* v. *Smith,* 46 N.J. 510. But there may be rationally permissible disagreement in certain cases. A court may rely upon the doctrine of permissive uncertainty where long usage may give otherwise imprecise language sufficiently clear meaning. In *State* v. *Muolo,* 119 Conn. 323, 325, our Supreme Court said: "It is incumbent upon any court, in the consideration of an attack upon the constitutionality of a legislative act, to approach the question with great

caution, examine it with infinite care, make every presumption and intendment in its favor, and sustain the act unless its invalidity is clear." It is the duty of a court to strive for a construction of a statute that will support its constitutionality. *Screws v. United States,* 325 U.S. 91, 98. Therefore, in reaching a decision, "we must make every proper presumption and intendment in favor of the legislation and it must be sustained unless its invalidity appears beyond reasonable doubt." *State ex rel. Higgins* v. *Civil Service Commission,* 139 Conn. 102, 111.

We turn now to a consideration of how the courts and the legislatures have treated the problem of vagueness and uncertainty in the context of disorderly conduct statutes such as the one here in question.

In *State* v. *Reynolds,* 243 Minn. 196, the court held that the crime of disorderly conduct is purely statutory; it did not exist at common law and, therefore, the basic elements of the crime must be found in the language of the statute. We have likewise held that "[d]isorderly conduct was not an offense at common law." *State* v. *Robinson,* 23 Conn. Sup. 430, 431, 1 Conn. Cir. Ct. 292; see 12 Am. Jur. 2d, Breach of Peace and Disorderly Conduct, § 28.

Four recent Connecticut cases deal explicitly with our disorderly conduct statute. In *State* v. *Robinson,* supra, the defendant was charged with disorderly conduct in telephoning the female complaining witnesses from his own home and applying obscene language to them in the privacy of their homes. We set aside the conviction upon the ground that the term "in any place" as used in the statute means a public place. In *State* v. *Avnayim,* 24 Conn. Sup. 7, 10, 1 Conn. Cir. Ct. 348, 351, we sustained the conviction for disorderly conduct where the de-

fendant's boisterous and belligerent conduct at the scene of an automobile accident "was such as to create a commotion or disturbance and thus render him liable to arrest for disorderly conduct." In *State* v. *Petty,* 24 Conn. Sup. 337, 339, 1 Conn. Cir. Ct. 574, 577, cert. denied, 375 U.S. 848, we sustained the defendants' convictions of disorderly conduct for holding sit-in demonstrations in private offices, saying: "We are aware that the term 'disorderly conduct' is not one of precise meaning. It has been variously defined in different jurisdictions and no definition is generally accepted which is of such precision that it may readily be determined whether particular conduct is or is not disorderly." See also *State* v. *Boles,* 5 Conn. Cir. Ct. 22, 34.

Both in the *Avnayim* and *Petty* cases, we relied heavily upon *People* v. *Harvey,* 307 N.Y. 588, a leading New York case, to sustain the constitutional validity of our disorderly conduct statute. But following the decision in *People* v. *Harvey,* supra, the New York legislature enacted a new statute on disorderly conduct.[2] The effect of this new New York statute is to render the *Harvey* case of little, if any, precedential value. Other statutes, particularly those in New Jersey and in Massachusetts, contain more specificity than our own statute.[3] Moreover,

[2] "A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: 1. He engages in fighting or in violent, tumultuous or threatening behavior; or 2. He makes an unreasonable noise; or 3. In a public place, he uses abusive or obscene language, or makes an obscene gesture; or 4. Without lawful authority, he disturbs any lawful assembly or meeting of persons; or 5. He obstructs vehicular or pedestrian traffic; or 6. He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse; or 7. He creates a hazardous or physically offensive condition by any act which serves no legitimate purpose." N.Y. Pen. Law § 240.20.

[3] For example, see § 250.2 of the Model Penal Code (Proposed Official Draft, 1962), which reads as follows: "(1) A person is guilty of disorderly conduct if, with purpose to cause public incon-

there is no lack of precedent in holding our type of statute constitutionally bad for vagueness. *Baker* v. *Bindner,* 274 F. Sup. 658, 663; cf. *Lanzetta* v. *New Jersey,* 306 U.S. 451, 458; *United States* v. *Margeson,* 259 F. Sup. 256, 269; see notes, 12 A.L.R.3d 1448, 1450, 70 L. Ed. 322.

So, however forceful and persuasive the arguments may be compelling a determination in favor of unconstitutionality of our disorderly conduct statute, the court must bear in mind the admonition in *United States* v. *Roth,* 237 F.2d 796, 797: "[I]t is not the part of responsible judicial administration for an inferior court such as ours, whatever our personal opinions, to initiate a new and uncharted course of overturn of a statute thus long regarded of vital social importance and a public policy of wide general support." Earlier, in *State* v. *Muolo,* 119 Conn. 323, 326, our Supreme Court said that while "any court has power to pass on the constitutionality of a statute and it may be its duty to declare it invalid," nevertheless "a court should take such action only upon the clearest ground or where the rights of litigants make it imperative that it should do so. Otherwise it is better . . . to leave the decision to our higher courts, to which the matter may be brought by appeal or otherwise."

In recognition of this court's modest jurisdiction and having in mind the foregoing considerations, the motion to quash the second count of the information must be and is denied.

---

venience, annoyance or alarm, or recklessly creating a risk thereof, he: (a) engages in fighting or threatening, or in violent or tumultuous behavior; or (b) makes unreasonable noise or offensively coarse utterance, gesture or display, or addresses abusive language to any person present; or (c) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor. 'Public' means affecting or likely to affect persons in a place to which the public or a substantial group has access."