STATE OF CONNECTICUT *v.* RICHARD COLLINS

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued March 6—decided April 30, 1963

*Herbert J. Bundock,* public defender, with whom, on the brief, was *John F. James,* special public defender, for the appellant (defendant).

*John F. McGowan,* assistant state's attorney, with whom, on the brief, was *Otto J. Saur,* state's attorney, for the appellee (state).

KING, J. The defendant, after a trial to the jury, was convicted of breaking and entering in violation

of General Statutes § 53-76 and was sentenced to prison. From that judgment he has appealed. The basic claims of error center on the admission in evidence, over the objection of the defendant that they were the fruits of an illegal search, of a small canvas bag which he was carrying, and its contents,[1] as well as on the admission of certain testimony concerning the contents. A motion to suppress, orally made in the course of the trial, raised the same claim with respect to the bag and its contents. The evidence was clearly material to the state's case.

The overruling of the motion to suppress the evidence has been assigned as error. The state maintains that a motion to suppress is unknown to our trial procedure, citing *State* v. *Magnano,* 97 Conn. 543, 547, 117 A. 550. See also *State* v. *Reynolds,* 101 Conn. 224, 235, 125 A. 636; *State* v. *Carol,* 120 Conn. 573, 574, 181 A. 714. One reason why such a motion was not formerly entertained was that prior to the decision in *Mapp* v. *Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, any illegality in the search and seizure of evidence was irrelevant on the question of its admissibility. It is unnecessary in this case to determine whether our present trial procedure encompasses the use of a motion to suppress. At the trial, the admission in evidence of the bag and its contents was objected to on the same grounds as those stated in the motion to suppress. After a full hearing, in the absence of the jury, on the legality and reasonableness of the search and seizure of the bag and its contents, the court ruled that the search and the seizure, under the circumstances, were lawful, and admitted in evidence the

---

[1] All of the contents except an electric shaver actually were excluded, at the trial, on grounds not involved in this appeal.

bag and the electric shaver discovered in it. This ruling necessarily included the ground of exclusion raised in the motion to suppress. Consequently, only the ruling on evidence need be considered. See note, 50 A.L.R.2d 531, 589.

The factual background necessary for an understanding of the case may be summarized as follows: On August 8, 1961, at about 2:30 in the morning, two Stamford police officers, William F. Polotaye and Thomas A. DeGeorge, pursuant to a routine police assignment were operating a cruiser through a portion of Stamford which embraced the well-lighted intersection of Main and Gay Streets. Polotaye, who was not driving, observed the defendant and a companion walking in a southerly direction on Gay Street. As the police car proceeded in a westerly direction along Main Street, Polotaye looked out of the rear window and saw that the defendant, who was now crossing the intersection, was carrying a small canvas bag in his hand. Polotaye also saw one of the men turn his head and look in the direction of the cruiser. The defendant and his companion, after crossing the intersection, proceeded south on Pacific Street, which is opposite Gay Street. DeGeorge, who was driving the police cruiser, turned it around and drove it alongside the defendant and his companion. The officers got out of their car and called to the men, "Wait. We would like to talk to you." Both men thereupon stopped. The officers then inquired where they had been, and the men said they had been to a crap game. Polotaye took the canvas bag and on looking into it saw that it contained an electric shaver, rolled money and loose change. After inspection of the contents of the bag, it was decided that the defendant should be searched. When the

defendant was asked where he had acquired the money, he answered, "I won it in a crap game." The defendant also said that he was in trouble and could not get involved in anything. He was more or less fidgety and kept moving back and forth. He was ordered to stand still and to put his hands against the police car while he was searched for possible weapons. Both the defendant and his companion were then taken to police headquarters. Some six hours later, at about 8:30 a.m., the Stamford police department received a complaint from Anthony Cacace that his place of business had been broken into and that certain articles had been stolen. Cacace identified the canvas bag and its contents as being the articles stolen.

According to the finding, the state claimed that the officers stopped the defendant and his companion because of the hour of their presence on a street where there was no other traffic, because one of the two men turned his head and watched the police cruiser as it went by them, and because one of them carried a small bag. Although the evidence in the state's appendix indicates that there were additional circumstances which may reasonably have prompted the officers to accost the men, these circumstances are not referred to in the finding and we cannot consider them.

The search of the bag amounted to a partial search of the person, since the bag was a portable personal effect in the immediate possession of the defendant. See 79 C.J.S. 832, Searches and Seizures, § 66 (c). The "frisking" of the defendant, as he stood against the car, to see if he was armed was also a search of the person. Nothing found as a result of the frisking was offered in evidence, and thus we have no occasion to determine whether, in

and of itself, that search could be held reasonable, on the facts of this case, as something done by the officers to assure their own safety. See cases such as *People* v. *Martin,* 46 Cal. 2d 106, 108, 293 P.2d 52; *People* v. *Jones,* 176 Cal. App. 2d 265, 267, 1 Cal. Rptr. 210; Collings, "Toward Workable Rules of Search and Seizure—An Amicus Curiae Brief," 50 Calif. L. Rev. 421, 430-38. The failure of the parties, in their claims to the trial court, to concentrate their attention on the search of the bag probably to some extent misled the court and contributed to the inadequacy of the record.

Amendments IV and XIV, § 1, of the federal constitution and article first, § 8, of the Connecticut constitution do not forbid searches and seizures but only unreasonable searches and seizures. While an illegal search must necessarily be an unreasonable one, a search otherwise legal except for the unreasonable way in which it was conducted, as for instance by the use of excessive and unnecessary force or brutality, would still be unreasonable and therefore a violation of the constitutional provisions. See *Pickett* v. *Marcucci's Liquors,* 112 Conn. 169, 174, 151 A. 526; 47 Am. Jur., Searches and Seizures, § 41; Collings, op. cit., 437. If the search of the bag was illegal, then it was unreasonable and the evidence of the contents of the bag was inadmissible. *State* v. *DelVecchio,* 149 Conn. 567, 573, 182 A.2d 402; *State* v. *Fahy,* 149 Conn. 577, 582, 183 A.2d 256, cert. granted, 372 U.S. 928, 83 S. Ct. 871, 9 L. Ed. 2d 732. A properly conducted search incidental to a lawful arrest is not illegal even though it is made without a warrant. *State* v. *DelVecchio,* supra; *Pickett* v. *Marcucci's Liquors,* supra. This rule avails the state nothing, however, since neither party claims that the search of the

bag was incidental to any arrest. The precise time of the arrest does not appear, but it took place at some time after the officers saw what was in the bag. There is no suggestion that the defendant and his companion would have been taken to headquarters but for the officers' observation of the contents of the bag. Especially in view of this fact, the search of the bag obviously was not incidental to any arrest; on the contrary, the sight and the examination of the contents of the bag were a cause of the arrest. This being so, the search and seizure would be, prima facie at least, unlawful. See *Johnson* v. *United States,* 333 U.S. 10, 16, 68 S. Ct. 367, 92 L. Ed. 436; *State* v. *Reynolds,* 101 Conn. 224, 229, 125 A. 636.

The state's sole claimed justification for the search of the bag was the consent of the defendant. The defendant makes no complaint of the accosting or of his interrogation, as such, apart from the search and seizure of the bag and its contents. Consequently, we need not consider the legality of the accosting of the defendant on the street by the police officers, nor of their interrogation of him. See cases such as *People* v. *Blodgett,* 46 Cal. 2d 114, 117, 293 P.2d 57; *People* v. *Simon,* 45 Cal. 2d 645, 650, 290 P.2d 531; *Price* v. *State,* 227 Md. 28, 33, 175 A.2d 11; *Cornish* v. *State,* 215 Md. 64, 68, 137 A.2d 170; 5 Am. Jur. 2d, Arrest, § 1; Sowle, Police Power and Individual Freedom, pp. 11-20 (1962); see also *United States* v. *Vita,* 294 F.2d 524, 530 (2d Cir.), cert. denied, 369 U.S. 823, 82 S. Ct. 837, 7 L. Ed. 2d 788.

The court, in admitting the evidence, ruled that the search and the seizure were lawful. It did not expressly find that the defendant consented to the search. The ruling admitting the bag and its con-

tents can be sustained on the state's claim of consent only if a factual conclusion by the court that the defendant consented to the search of the bag was implicit in the ruling that the search was lawful. *State* v. *Hanna,* 150 Conn. 457, 469, 191 A.2d 124. Since consent was relied on by the state to support the search, the burden was on the state affirmatively to prove consent. *State* v. *Hanna,* supra. A conclusion of consent has been implied from a court's ruling admitting seized evidence when some substantial basis existed which justified the inference. *People* v. *Kinard,* 210 Cal. App. 2d 85, 87, 26 Cal. Rptr. 377. A ruling on evidence is ordinarily to be determined on the basis of the portion of the finding relating to the ruling. Practice Book § 405. Here, nothing in the portions of the finding relating to the rulings on evidence suggests any consent or that the court found any consent or even gave any consideration to the question of consent. This discussion would dispose of the case except for the confusion in the finding arising from two paragraphs in the portion of the general finding setting forth the state's claims of proof. Neither paragraph was attacked by the defendant. The first was that the officers stopped the defendant and inquired what he had in the bag. The second was that the defendant, who was carrying the bag, then handed it to one of the officers, who looked into it. The testimony of the officers, as previously related, was that they "took" the bag. In the absence of any indication that the court considered or found consent, we cannot on this record, construe the two paragraphs of mere claims of proof in the general portion of the finding as establishing, or even indicating, that the court itself concluded that the state had proven

consent. Nor are they susceptible of a construction that implicit in the court's ruling admitting the evidence was a conclusion of consent. Absent such a conclusion, the record discloses no justification for the admission of the evidence.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.