STATE OF CONNECTICUT *v.* ROBERT ELLIOTT

KING, C. J., MURPHY, ALCORN, HOUSE and COTTER, JS.

Argued October 7—decided November 24, 1965

*Robert K. Lesser,* for the appellant (defendant).

*Wilfred J. Rodie,* assistant prosecuting attorney, for the appellee (state).

ALCORN, J.  The defendant was convicted by a jury in the Circuit Court of obstructing an officer and keeping a disorderly house in violation of §§ 53-165 and 53-230 of the General Statutes.[1] Both offenses are misdemeanors.  General Statutes § 1-1. The defendant appealed to the Appellate Division of that court, which affirmed the judgment.  A claim made in that appeal was that all evidence introduced to prove the charge of keeping a disorderly house was obtained by an unreasonable search of the defendant's dwelling without a warrant and was therefore inadmissible.  Upon the defendant's application, we granted certification restricted to the question of the legality of the entry without a warrant.

Many of the facts are undisputed.  The defendant owned a one-family dwelling at 508 South Avenue in Bridgeport where he lived with two other men. In the early morning of April 27, 1963, a party, with numerous guests, was in progress in the living room and kitchen.  About 1:45 a.m. on that date, a complaint was received at Bridgeport police headquarters concerning a disturbance or "noisy party"

---

[1] "Sec. 53-165.  RESISTING OFFICER.  Any person who obstructs, resists or abuses any officer concerned in the administration of justice while in the execution of his office shall be fined not more than one hundred dollars or imprisoned not more than three months or both."

"Sec. 53-230.  KEEPING A HOUSE OF ILL-FAME OR A DISORDERLY HOUSE.  Any person who keeps a house which is, or is reputed to be, a house of ill-fame, or which is resorted to, or is reputed to be resorted to, for the purposes of prostitution or lewdness, or a house which is, or is reputed to be, a house or place of assignation or resides in or frequents any such house for such purpose or keeps or maintains a disorderly house or a house where lewd, dissolute or drunken persons resort or a house where drinking, carousing, dancing or fighting is permitted, to the disturbance of the neighbors, shall be fined not more than one hundred dollars or imprisoned not more than six months or both."

at the house. In response to this complaint several police officers promptly went there. The officers did not have either an arrest warrant or a search warrant. As they approached the house, the officers heard a juke box playing and voices and noises coming from within. They knocked on the entrance door, and, after a short delay, the defendant opened the door, stood in the doorway blocking it and told the police they could not enter without a search warrant. The police sought permission to enter, and the events thereafter are disputed.

The state claimed that, through the open doorway, it became clearly evident to the police officers that a drunken brawl was in progress and that two women were fighting, screaming and making loud, boisterous and profane noises, and that the police sought to enter the house in order to quell the disturbance. As the superintendent of police attempted to enter, the defendant knocked him down, whereupon the superintendent ordered the defendant arrested for "obstructing".

The defendant claimed that the superintendent moved toward the doorway in which the defendant was standing and told him to get out of the way, that the defendant raised his arm to his face, that the superintendent grabbed him, and that the defendant fell to the floor, whereupon the superintendent arrested him for "obstructing".

It is undisputed that, following the defendant's arrest, the defendant was placed in a squad car in which he was taken to the police station and booked. Thereafter, the police officers entered the house and arrested several of the persons present for drunkenness.

The court admitted into evidence, over the defendant's objection, testimony by the police officers as

to their observations after entering the house. These evidential rulings present the issue before us. The officers were asked to "tell the ladies and gentlemen of the jury exactly what you saw" and to "describe the premises from the doorway in". The defendant objected on the ground that answers to these questions were inadmissible and in violation of his rights under the fourth, fifth and fourteenth amendments to the constitution of the United States and "Section 8" of the constitution of Connecticut because there was no evidence of a lawful arrest or of a valid search warrant or of other legal right of entry to the house. By his reference to "Section 8" of the Connecticut constitution we assume that the defendant intended to invoke § 8 of article first. The thrust of the defendant's argument is that the only arrest for an offense occurring in the presence of the officers was on the charge of "obstructing", and that an entry into, and search of, the house could not be justified as incidental to that arrest even though that arrest was lawful. There is no claim that that arrest was unlawful or that the defendant was, in acting as he did, resisting an unlawful arrest. See *State* v. *Amara,* 152 Conn. 296, 299, 206 A.2d 438; *State* v. *Engle,* 115 Conn. 638, 648, 162 A. 922.

The record does not disclose when the defendant was arrested on the charge of keeping a disorderly house, but we assume that it was after the events related. The offense has been defined as keeping a house "the inmates of which behave so badly as to become a nuisance to the neighborhood". *State* v. *Maxwell,* 33 Conn. 259. As already indicated, the offense is a misdemeanor. Section 6-49 of the General Statutes authorizes police officers to arrest for a misdemeanor without a warrant when the person

arrested "is taken or apprehended in the act". Compliance with that statute determines the legality of an arrest without a warrant. *State* v. *Traub,* 150 Conn. 169, 173, 187 A.2d 230. "An accused is lawfully 'taken or apprehended in the act' if the circumstances observed by the officer preceding the arrest, viewed in the light of common knowledge and his own training and experience, gave him probable cause to believe that a crime was being, or had just been, committed." *State* v. *DelVecchio,* 149 Conn. 567, 575, 182 A.2d 402. The amount of evidence necessary to furnish probable cause for an arrest without a warrant is to be measured by the facts of the particular case, and it need not be evidence sufficient to convict. *Wong Sun* v. *United States,* 371 U.S. 471, 479, 83 S. Ct. 407, 9 L. Ed. 2d 441. A reasonable search which is incident to a lawful arrest is not unlawful even though it is made without a warrant. *State* v. *Collins,* 150 Conn. 488, 492, 191 A.2d 253. A lawful entry is necessarily an essential element of a reasonable search of a dwelling. Consequently, the crucial question in this case is whether, when the police officers stood at the door which the defendant had voluntarily opened and sought entry into the house, they had probable cause to believe that the crime of keeping a disorderly house was being or had just been committed. If they did, then they were authorized to make an arrest for that offense without a warrant and, as incidental to that arrest, to enter the house to make a search.

Undeniably a party was in progress at the house which had produced a complaint to the police at 1:45 in the morning. Because of that complaint police officers had gone to the house and, as they neared it, they could hear a clamor, swearing,

women screaming, loud profane words and the loud noise of a juke box coming from inside. When the defendant opened the door, they heard more of the same. Under these circumstances the officers had probable cause to believe that the crime of keeping a disorderly house was being committed before them and to arrest the defendant as the owner and occupant for that offense without a warrant. *Henry* v. *United States,* 361 U.S. 98, 104, 80 S. Ct. 168, 4 L. Ed. 2d 134; *Draper* v. *United States,* 358 U.S. 307, 310, 79 S. Ct. 329, 3 L. Ed. 2d 327; *Carroll* v. *United States,* 267 U.S. 132, 162, 45 S. Ct. 280, 69 L. Ed. 543. Such being the situation, an entry into and search of the premises without a warrant as incidental to that arrest was not illegal. *United States* v. *Rabinowitz,* 339 U.S. 56, 60, 70 S. Ct. 430, 94 L. Ed. 653; *Harris* v. *United States,* 331 U.S. 145, 157, 67 S. Ct. 1098, 91 L. Ed. 1399; *Marron* v. *United States,* 275 U.S. 192, 198, 48 S. Ct. 74, 72 L. Ed. 231; *State* v. *Collins,* supra.

We do not, however, consider the information sought to be elicited by the questions objected to as embracing evidence resulting from a search of the defendant's house. The objection was merely to testimony as to what the police officers observed by the use of their senses. They "merely saw what was placed before . . . [them] in full view"; *Ker* v. *California,* 374 U.S. 23, 43, 83 S. Ct. 1623, 10 L. Ed. 2d 726; and were asked to relate to the jury what they saw. See also *United States* v. *Lefkowitz,* 285 U.S. 452, 465, 52 S. Ct. 420, 76 L. Ed. 877. Even if a search were in issue, however, there is no merit to a claim that it would have been illegal because the only arrest which preceded it was for "obstructing". In *State* v. *Reynolds,* 101 Conn. 224, 229, 125 A. 636, we observed that "if the general

rule had required the arrest before the search we should think it far too technical an application of the rule to hold that this search was unlawful because it preceded the arrest by an appreciable moment of time". While the rule discussed in that case as to the admissibility of illegally obtained evidence is no longer the law; see *State* v. *DelVecchio,* supra, 572; nevertheless, the quoted language is still apt. In *People* v. *Simon,* 45 Cal. 2d 645, 648, 290 P.2d 531, the court said: "[I]f the officer is entitled to make an arrest on the basis of information available to him before he searches, and as an incident to that arrest is entitled to make a reasonable search of the person arrested and the place where he is arrested, there is nothing unreasonable in his conduct if he makes the search before instead of after the arrest. . . . [T]he important considerations are whether the officer had reasonable cause before the search to make an arrest and whether the search and any seizures incident thereto were or were not more extensive than would reasonably be justified as incident to an arrest." See also *Willson* v. *Superior Court,* 46 Cal. 2d 291, 294, 294 P.2d 36; *State* v. *Biloche,* 66 Wash. 2d 325, 327, 402 P.2d 491; *State* v. *Hoover,* 219 Ore. 288, 347 P.2d 69.

In the present case the defendant was, of course, actually arrested before the police entered the house. While the stated ground for his arrest was a violation of the statute imposing a penalty for resisting an officer, the arrest on that charge was but an incident in the totality of circumstances then confronting the police officers. The significant question is whether the circumstances justified an arrest without a warrant for keeping a disorderly house rather than what name the police attached to the arrest. See *Bell* v. *United States,* 254 F.2d 82, 86

(D.C. Cir.); *Ralph* v. *Pepersack,* 335 F.2d 128, 132 (4th Cir.). The police officers had responded to a complaint which reasonably suggested a disorderly house. As they approached it, noises audible from the street would tend to confirm that assumption. In response to their knock, the door was voluntarily opened by the defendant. The noises which emanated through the open door gave reasonable ground for the officers to believe that there was in fact a disorderly house and that their duty required them to attempt an entry to quell the disturbance. When that entry was resisted by the defendant, the fact that his resistance gave reason for his arrest did not alter the fact that the circumstances then present would have justified the officers in arresting him instead, or in addition, for keeping a disorderly house.

The law is clear that testimony concerning the conditions discovered by the police after their entry into the house could not be used to sustain the legality of an arrest in order to justify the entry. *Henry* v. *United States,* 361 U.S. 98, 104, 80 S. Ct. 168, 4 L. Ed. 2d 149; *State* v. *Spellman,* 153 Conn. 65, 70, 212 A.2d 413; *State* v. *Collins,* supra, 493. No claim is made, however, that the evidence was so utilized in this case.

The defendant's claim that § 30-106 of the General Statutes is applicable is without merit. That section, which is part of the Liquor Control Act, authorizes violent entry of certain described premises and under certain conditions by an officer armed with a warrant for the arrest of a person therein.

There is no error.

In this opinion the other judges concurred.