STATE OF CONNECTICUT *v.* RICHARD PENNA

FILE No. CR 6-43782

STATE OF CONNECTICUT *v.* JAMES TERRELL

FILE No. CR 6-43783

CIRCUIT COURT                                SIXTH CIRCUIT

Memorandum filed February 3, 1967

*Philip E. Mancini, Jr.,* prosecuting attorney, for the state in both cases.

*Frank W. Sledziona,* of New Haven, for the defendant Penna.

*Ira B. Grudberg,* of New Haven, for the defendant Terrell.

JACOBS, J. The issues involved in these cases are identical. They were heard and argued together and may be disposed of in a single opinion. Both defendants are charged with violations of § 53-216 (sodomy) and § 53-217 (indecent assault).

The defendants' motions to suppress arise under § 54-33f[1] of the General Statutes. A motion to suppress is a statutory proceeding which was established following *State* v. *Fahy,* 149 Conn. 577, 582, rev'd on other grounds, 375 U.S. 85, where our Supreme Court recognized that the decision in *Mapp* v. *Ohio,* 367 U.S. 643, was applicable to state practice. Prior to the enactment of § 54-33f, there was no such motion in Connecticut criminal procedure or at common law. See *State* v. *Mariano,* 152 Conn. 85, 89. Thus, if the defendants have a procedural remedy, as claimed, it must arise under § 54-33f.

---

[1] "Sec. 54-33f. MOTION FOR RETURN OF PROPERTY. A person aggrieved by search and seizure may move . . . for the return of the property and to suppress for use as evidence anything so obtained on the ground that: (1) The property was seized without a warrant, or (2) the warrant is insufficient on its face, or (3) the property seized is not that described in the warrant, or (4) there was not probable cause for believing the existence of the grounds on which the warrant was issued, or (5) the warrant was illegally executed. . . . If the motion is granted, the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial. . . ."

Section 54-33g was enacted in 1963 to replace § 54-33. Public Acts 1963, No. 652 § 8. Section 54-33a (a) provides that "property," as used in §§ 54-33a to 54-33g, "includes, without limitation, documents, books, papers, films, recordings and any other tangible thing." A reading of § 54-33f leads to the conclusion that the only clause applicable to these cases is § 54-33f (1), which provides, as one of the grounds of suppression, that the "property was seized without a warrant." Thus, there is a real question whether these defendants may claim a remedy under § 54-33f.

But even if § 54-33f can have no application to the cases at bar, the state has acquiesced in its use; see *State* v. *Mariano,* supra; and since the hearing on the motions was properly held, the court must decide (1) the issue of the applicability of § 54-33f, and (2) the substantive issues raised during the hearing and in the briefs.

Turning for a moment to the applicability of § 54-33f, there are three alternatives: (1) The legislature enacted a definition of property (§ 54-33a [a]) which was to apply to § 54-33f. Here, of course, the suppression must refer to the words "tangible things." In the context of §§ 54-33a to 54-33g, and according to general notions of jurisprudence, testimony or information is not a "tangible thing." (2) Section 54-33f is for all practical purposes a verbatim adoption of Rule 41 (e) of the Federal Rules of Criminal Procedure. Hence, it could be argued that the federal notions of suppressible material should be imported into § 54-33f in order to arrive at a proper interpretation. In 1961, in *Silverman* v. *United States,* 365 U.S. 505, the court for the first time reversed a conviction obtained with the assistance of electronic eavesdropping. The case concerned eavesdropping by police on conversations

in the headquarters of a Washington, D.C., gambling venture by means of a "spike mike"—a microphone with a foot-long spike attached. We may therefore reasonably conclude that the remedy provided for under § 54-33f covers material broader in scope than the other sections, which are obviously applicable only to "tangible things." (3) And finally there is a statement in *State* v. *Mariano,* supra, 90, to the effect that the trial court is vested with a broad discretion in determining what issues should be tried. Broadly interpreted, this may mean that the hearing on the motion to suppress is in effect an expedient means for adjudicating suppressible material which may be offered at trial.

The defendants moved to suppress testimony by police officers concerning information they gained in what is alleged to have been an illegal search and seizure. The motion arises under § 54-33f (1), which provides for suppression on the ground that "[t]he property was seized without a warrant." The state concedes there was no warrant in these cases. But it is settled law that "[a] reasonable search which is incident to a lawful arrest is not unlawful even though it is made without a warrant." *State* v. *Elliott,* 153 Conn. 147, 152; *State* v. *Collins,* 150 Conn. 488, 492; *State* v. *Towry,* 26 Conn. Sup. 35. Thus, we are impelled to ask: Was this a search? And was this a lawful arrest?

To find a search, there must be an interference with or an invasion of person or property. In *Silverman* v. *United States,* supra, 511, the court found that the police had encroached upon a constitutionally protected area when they gained evidence by overhearing the defendant's conversations "by usurping part of the petitioners' house or office." In a California case similar to the cases at bar, *People* v. *Alvarez,* 236 Cal. App. 2d 106, police officers were told by an informer where to find stolen

goods, and the officers saw one of the stolen television sets through the door of the defendant's house when his wife opened the door to talk to the police. The court held that there was no search. The court said (p. 112): "A search implies a prying into hidden places for something that is concealed, something that has been intentionally put out of the way." See *Hester* v. *United States,* 265 U.S. 57 (a trespass upon the land—the "open field" doctrine—of the defendant at the time of the seizure will not render the seizure unlawful unless the trespass has carried the officers within the curtilage of the defendant's house); *United States* v. *Romano,* 330 F.2d 566, cert. denied, 380 U.S. 942.

In the cases at bar, we find no prying or usurpation. Also, the present cases are distinguishable from the cases cited in defendants' brief. In *McDonald* v. *United States,* 335 U.S. 451, decided in 1948, police officers gained access to a rooming house, where they believed an illegal lottery was being operated, by unlawfully climbing into the landlady's quarters, and they observed defendant's conduct by climbing on a chair and peeping through the transom of McDonald's room. Clearly, therefore, where officers are unlawfully on the premises within the curtilage, anything they see, even if in plain view, may not be seized. Nor may the officers testify as to what they have seen. *Williams* v. *United States,* 263 F.2d 487; *McGinnis* v. *United States,* 227 F.2d 598. In *People* v. *Regalado,* 224 Cal. App. 2d 586, the officer used an uncapped overhead pipe to view the defendant's conduct in a toilet; in *Bielicki* v. *Superior Court,* 57 Cal. 2d 602, the officers drilled a hole in the door of the defendant's cell; in *Whitley* v. *United States,* 237 F.2d 787, the court found the arrest was not legal; and in *Smayda* v. *United States,* 352 F.2d 251, a hole was cut in the roof of a toilet house to view the defendant's behavior. Here,

no unusual method or device was used. The officers simply observed the defendants' conduct through an open window.

The defendants argue that the officers trespassed and invaded their privacy when they stood outside the window. In *State* v. *Plummer,* 5 Conn. Cir. Ct. 35, the Appellate Division of this court relied on *Roberts* v. *Rosenblatt,* 146 Conn. 110, and *United States* v. *St. Clair,* 240 F. Sup. 338, to find that officers on a fire escape outside the defendant's window were licensees and did not invade a constitutionally protected area. We think the same reasoning is also applicable here. The area outside the window was in the nature of a common corridor, public hallway, landing or stairwell. See *United States* v. *St. Clair,* supra, 340.

This court reaches the conclusion that the officers' actions did not constitute a search; and even if it was a search, it would have been a search incident to a lawful arrest.

It is true, of course, that if the officers' action was a search it was made immediately prior to the arrest. But in *State* v. *Elliott,* 153 Conn. 147, 153, the Supreme Court adhered to the rule in *State* v. *Reynolds,* 101 Conn. 224, 229: "[I]f the general rule had required the arrest before the search we should think it far too technical an application of the rule to hold that this search was unlawful because it preceded the arrest by an appreciable moment of time." Thus, the rule in this state seems to be that the search incident to a lawful arrest may precede the arrest itself. *State* v. *Elliott,* supra. The Supreme Court of the United States, in *Ker* v. *California,* 374 U.S. 23, made it clear that the states may formulate their own rules of practice under the fourth amendment; the rule in the *Elliott* case is within the scope of that permission.

The arrest itself was made on speedy information in compliance with § 6-49. That section provides a less strict standard for arrests without warrant for felonies provided they are made by members of an "organized local police department." But here the officers acted on the speedy information of another, not simply "reasonable grounds" of belief. Here, the informer told the police officers that immoral acts were being committed, and the officers, acting immediately on receipt of the information, made the observation which led to the arrest. In *State* v. *Plummer,* supra, the court stated that the investigation was legal where the officers acted on speedy information; indeed, our research fails to disclose a case which holds that the "speedy information" must be reliable; thus, as we read § 6-49, the argument made by the defendants relating to probable cause becomes irrelevant.

The defendants also insist that they are entitled to know the identity of the informer in order to enable them to establish that there was no probable cause for the search. On the one hand, we have concluded that the officers' conduct did not constitute a search, and, on the other hand, assuming arguendo that there was a search, we have found that it was incident to a lawful arrest which was predicated on speedy information under § 6-49, which in turn does not establish a probable cause criterion.

Moreover, this court is bound by the decision in *State* v. *Plummer,* supra, where the Appellate Division concluded that the weight of authority is that there is no requirement to disclose the identity of the informer. See *Rugendorf* v. *United States,* 376 U.S. 528; *Jones* v. *United States,* 362 U.S. 257. Also, the Appellate Division ruled that "[w]here disclosure has been granted, it has been where probable cause has been predicated upon information obtained from the informant." *State* v. *Plummer,*

supra, 41; see *United States* v. *Robinson,* 325 F.2d 391; *Costello* v. *United States,* 298 F.2d 99; *Sorrentino* v. *United States,* 163 F.2d 627; *United States* v. *Blich,* 45 F.2d 627; *United States* v. *Fay,* 234 F. Sup. 543; *United States* v. *Keown,* 19 F. Sup. 639. In the instant cases, as in *State* v. *Plummer,* supra, the arrest was made, not on probable cause, but on speedy information and the officers' own personal observation.

For the reasons stated herein, the defendants' motions to suppress the evidence must be, and the same are, hereby denied.