## State of Connecticut v. Arthur Sweeney

King, C. J., Alcorn, House, Cotter and Ryan, Js.

Argued December 6, 1968—decided January 28, 1969

*Timothy C. Moynahan,* for the appellant (defendant).

*Walter M. Pickett, Jr.,* assistant state's attorney, with whom, on the brief, was *Francis M. McDonald,* state's attorney, for the appellee (state).

KING, C. J.  In the early morning of September 1, 1966, Charles Harris and John Dunn, plainclothes detectives, were patrolling the streets of Waterbury in their police car.  At about 2 a.m., as they were proceeding in a southerly direction on Bank Street, they observed the defendant, Arthur Sweeney, walking in a northerly direction on Bank Street and carrying a brown paper bag.  Upon seeing the detectives, the defendant immediately turned and ran down Center Street, a side street, and attempted to hide under a parked car.  The detectives followed,

and, as they approached the defendant, he arose and began to run. The bag which he was carrying ripped and dropped to the ground, and the contents, bills and loose and rolled coins, scattered over the sidewalk and into the gutter. After he had run ten or twelve feet, the detectives overtook and accosted him.

The defendant refused to answer Harris' question as to whether he had broken in anywhere, and he commenced to shout in a loud voice that he was being picked on, that he had not done anything, and that the detectives had no right to hold him. At that point people arrived from both directions on Center Street although prior to the shouting no other persons had been seen on that street and there was very little motor vehicle traffic in the vicinity. The detectives placed the defendant under arrest for disorderly conduct and identified themselves to the bystanders, who then, having been thus reassured, left the scene.

The defendant was taken to the police station and booked and before being placed in a cell was subjected to a standard, thorough search of his person. This search produced a quantity of coins and a set of keys. Subsequently, the defendant was charged with breaking and entering a building in violation of General Statutes § 53-76, and before his trial on that charge he made a motion to suppress, as evidence, the coins and keys, claiming that they had been obtained as a result of an illegal search. The motion to suppress was denied, and the defendant was found guilty as charged. From the judgment rendered he has appealed.

In his brief, the defendant does not effectively pursue any attack on the subordinate facts of the finding but claims that these facts, as found, do not

support the court's conclusion that the arrest for disorderly conduct was legal. He does not question the fact that, if this arrest was legal, the search pursuant to the arrest was also legal and the motion to suppress was properly denied. See *State* v. *Towles,* 155 Conn. 516, 521, 235 A.2d 639; *State* v. *Collins,* 150 Conn. 488, 492, 191 A.2d 253. His basic claim seems to be that the arrest for disorderly conduct was a mere pretext to acquire an incidental right to search the defendant and thus, as he claims, was contrary to language in cases such as *Ker* v. *California,* 374 U.S. 23, 42, 83 S. Ct. 1623, 10 L. Ed. 2d 726.

Section 6-49 of the General Statutes authorizes police officers to arrest without a warrant when the person arrested is "taken or apprehended in the act" of committing a criminal offense. A person is " 'lawfully "taken or apprehended in the act" if the circumstances observed by the officer preceding the arrest, viewed in the light of common knowledge and his own training and experience, gave him probable cause to believe that a crime was being, or had just been, committed.' *State* v. *DelVecchio,* 149 Conn. 567, 575, 182 A.2d 402. The amount of evidence necessary to furnish probable cause for an arrest without a warrant is to be measured by the facts of the particular case, and it need not be evidence sufficient to convict. *Wong Sun* v. *United States,* 371 U.S. 471, 479, 83 S. Ct. 407, 9 L. Ed. 2d 441." *State* v. *Elliott,* 153 Conn. 147, 152, 215 A.2d 108; *State* v. *Towles,* supra, 520.

Thus, the arrest for disorderly conduct was legal if Detective Harris, who arrested the defendant, had probable cause to believe that the defendant's actions constituted a violation of the disorderly conduct statute, General Statutes § 53-175. This statute

provides that "[a]ny person who, by offensive or disorderly conduct, annoys or interferes with any person . . . although such conduct may not amount to an assault or battery, shall be fined . . . or imprisoned . . . ." As applied to the facts of this case, disorderly conduct under our statute embraced two essential elements: (1) offensive or disorderly conduct on the part of the accused and (2) a resulting annoyance of, or interference with, another person.[1] As to the first element, the defendant was shouting at the detectives in a loud voice at 2 o'clock on a Thursday morning on an otherwise quiet public street. As to the second element, the detectives witnessed people approaching the scene of the shouting from both directions on Center Street, as an apparent consequence of this shouting.

The defendant claims that protestations as to the legality of his arrest cannot be considered "offensive or disorderly conduct" within the meaning of the statute and cites as authority for this position *Curtis* v. *United States*, 222 A.2d 840, 842, a case decided by the District of Columbia Court of Appeals. That case holds that, just as a person may use reasonable physical force to resist an illegal arrest, he may also raise his voice to protest an illegal arrest and that so to do, without more, cannot warrant an arrest for disorderly conduct. Connecticut case law is in general accord. *State* v. *Amara*, 152 Conn. 296, 299, 206 A.2d 438; *State* v. *Engle*, 115 Conn. 638, 648, 162 A. 922. But the *Curtis* case differs widely from the case here. The *Curtis* case involved an illegal arrest. Here, the defendant was not protesting an illegal arrest. As of the time of the shouting, there had been no arrest. In-

---

[1] Since the shouting occurred on the street, there is no question here that it occurred in a public place.

deed, the detectives made no attempt to arrest him until after the shouting commenced. It was the shouting which constituted the disorderly conduct, which, in turn, caused the arrest. Prior to that time, the detectives had merely attempted to investigate extremely unusual and suspicious conduct and circumstances. If we assume, without deciding, that, prior to the shouting, the detectives lacked probable cause to arrest the defendant on any charge, there is no question that they had the right, and indeed a duty, to investigate the defendant's unusual and suspicious behavior. *Terry* v. *Ohio,* 392 U.S. 1, 22, 88 S. Ct. 1868, 20 L. Ed. 2d 889; *White* v. *United States,* 222 A.2d 843, 845 (D.C. App., decided by the same court and on the same day as *Curtis* v. *United States,* supra); *State* v. *Williams,* 157 Conn. 114, 118, 249 A.2d 245; LaFave, " 'Street Encounters' and The Constitution: *Terry, Sibron, Peters,* and Beyond," 67 Mich. L. Rev. 39, 82. In response to this clearly lawful investigation, the defendant may have had the right to remain silent, to proclaim his innocence or to demand that he be let alone, but he had no right to act in such an unreasonable manner as to cause the public disturbance which he did. See *Thompson* v. *Louisville,* 362 U.S. 199, 205, 80 S. Ct. 624, 4 L. Ed. 2d 654; *State* v. *Avnayim,* 24 Conn. Sup. 7, 10, 1 Conn. Cir. Ct. 348, 351, 185 A.2d 295; *Commonwealth* v. *Gabrow,* 97 Pa. Super. 459, 463; 27 C.J.S. 519, Disorderly Conduct, § (4) (f). There is nothing in the *Curtis* case which purports to immunize the defendant from liability to arrest for disorderly conduct, as defined in our statute, on the facts here. Nor do we find any justification for the defendant's claim that the arrest for disorderly conduct was a mere subterfuge in order to acquire a right of incidental search.

It was not error for the court to have concluded that probable cause existed for the disorderly conduct arrest and that the search pursuant to that arrest was legal.

There is no error.

In this opinion ALCORN, HOUSE and RYAN, Js., concurred.

COTTER, J. (dissenting). The majority opinion establishes the rule that there is probable cause to believe that General Statutes § 53-175 is criminally violated in a set of circumstances in which an individual, in the precise words of the court's finding, "hollered in a very loud voice that the detectives were picking on him, that he didn't do anything, that they had no right to hold him" and that "people appeared on the scene . . . and . . . returned from whence they came when the detectives identified themselves" on the premise that such deportment constitutes disorderly conduct. The defendant did not engage in any profanity, obscenities or physical abuse, common to cases of this nature involving disorderly conduct. See cases such as *Thompson* v. *Louisville,* 362 U.S. 199, 80 S. Ct. 624, 4 L. Ed. 2d 654; *Chaplinsky* v. *New Hampshire,* 315 U.S. 568, 572, 62 S. Ct. 766, 86 L. Ed. 1031. Oral remonstrance, without the use of abusive epithets or indignities directed toward an officer, although bad manners, is not considered to be disorderly conduct. See *Landry* v. *Daley,* 288 F. Sup. 183, 187 (N.D. Ill.); *Oratowski* v. *Civil Service Commission,* 3 Ill. App. 2d 551, 561, 123 N.E.2d 146. It is to be noted that a statute defining disorderly conduct is to be construed strictly; *Commonwealth* v. *Lombard,* 321 Mass. 294, 296, 73 N.E.2d 465; in favor of the accused; *Lewis* v. *Commonwealth,* 184 Va. 69, 73,

34 S.E.2d 389; and against the prosecution. *Hackney v. Commonwealth,* 186 Va. 888, 892, 45 S.E.2d 241; see 27 C.J.S., Disorderly Conduct, § 1 (1). One may engage in his right to speak freely for the purpose of protesting, and, "[w]hen an individual seeks to pursue his constitutionally protected rights, criminality is not to be assessed against him on a supersensitive standard." *State* v. *Givens,* 28 Wis. 2d 109, 122, 135 N.W.2d 780; 12 Am. Jur. 2d, Breach of Peace and Disorderly Conduct, § 38; 6 Am. Jur. 2d, Assault and Battery, § 79. Disorderly conduct is based on the principle that in an organized society a person should so conduct himself with decency and propriety as not unreasonably to offend the sensibilities of others in the community, but it does not contemplate the application of a supersensitive or overly puritanical standard in measuring the conduct of an individual. *State* v. *Givens,* supra. I dissent.