STATE OF CONNECTICUT *v.* VINCENT S. HOLMES

ALCORN, C. J., HOUSE, THIM, RYAN and BARBER, Js.

142

Argued October 13—decided December 8, 1970

*Edward F. Hennessey,* for the appellant (defendant).

*George D. Stoughton,* chief assistant state's attorney, with whom, on the brief, was *John D. LaBelle,* state's attorney, for the appellee (state).

RYAN, J. The defendant, Vincent S. Holmes, together with Leroy Edmonds, was charged with the crime of conspiracy to violate § 19-481 (a) of the General Statutes (Rev. to 1968), which penalizes anyone who illegally possesses or has under his control any quantity of a narcotic drug. On a trial to the court, the defendant was found guilty as charged and has appealed to this court.

The defendant assigns error, first, in the refusal of the trial court to suppress certain evidence which he claims was obtained as a result of an illegal search, and, second, in that the evidence is insufficient to support the conclusion of the trial court that the defendant was guilty of the crime of conspiracy. The claim of the defendant that the trial court erred in refusing to find certain material facts which were admitted or undisputed is without merit.

The following facts were found: On November 6, 1968, at about 2 p.m., Reginald Sherwood and James Meehan, detectives in the Hartford police department, were seated in a parked and unmarked police cruiser adjacent to 1450 Main Street in Hartford. While so seated, Sherwood observed a car traveling at a moderate rate of speed in a southerly direction on Main Street. When this car was abreast of the cruiser, at a distance of about twenty feet, Sherwood observed a syringe in the hands of Edmonds, an occupant seated in the rear seat on the driver's side. Edmonds was holding the syringe up above the back of the front seat, and it appeared as if the syringe had been passed to him. Thomas Lee Johns was the driver of the car, and the defendant was seated in the right front seat. Louis Britt, known to the police to be a narcotics addict, occupied the right rear seat. The sighting of the syringe indicated to Sherwood the possibility of heroin use, and he thereupon turned the cruiser around and pursued the Johns car. Near Main and Morgan Streets, the cruiser pulled abreast of the Johns vehicle, and Meehan held up his badge and requested Johns to pull over. After Meehan's signal, as Johns was pulling over, the defendant turned around and spoke to Edmonds, whereupon Edmonds bent over in the rear seat. After both vehicles had stopped, the officers approached the Johns car, and Sherwood opened the rear door on the driver's side. He observed a syringe on the floor of the car between the feet of Edmonds and the rear seat. He then requested Edmonds to get out of the car, handcuffed him and placed him under arrest. He examined the syringe and found it empty. The syringe had a needle attached to it and was one of the type used by narcotics addicts for injecting heroin into a vein.

A rough search of Edmonds' pockets disclosed no narcotics, but Meehan, in searching the car, found, in the rear seat ashtray, a metal bottle cap with soot on it and a cotton pledget. The bottle cap is an item of narcotics paraphernalia known as a "cooker" and the cotton pledget is usually found with a cooker. The metal bottle cap and the cotton pledget therein were later found to contain traces of heroin.

After the arrest of Edmonds the defendant got out of the car, and Meehan positioned himself adjacent to him so as to restrain him if he attempted to move. Sherwood then performed a "frisk" or "pat down" search of the defendant without feeling inside his pockets and found nothing. The occupants of the car were taken to police headquarters, about one-tenth of a mile away, with the defendant and Edmonds riding in the rear seat of the cruiser and Meehan, Johns and Britt following in the Johns car. During the trip Sherwood saw the defendant fidget and squirm. Meehan observed the defendant squirm and move around while he was following in the Johns vehicle. The defendant was not handcuffed and his hands were free, while Edmonds remained handcuffed. Upon arrival at the police station Sherwood had Edmonds and the defendant get out of the car. Because of what he had seen the defendant doing, Sherwood searched his cruiser right after the defendant got out of it. Sherwood pulled the rear seat forward so as to see under it. This seat snapped out with a springing or jolting movement. Sherwood searched under the seat to see whether the defendant had disposed of anything. The officer removed from under the seat a glassine bag containing a white powder. The bag of white powder was found under the seat where the

defendant had been sitting. This bag was about one-half inch by three-quarters of an inch, was thin and weighed less than one ounce. It was of a type used by narcotics handlers to package heroin and the white powder looked like heroin. Upon laboratory analysis, the white powder was found to be heroin mixed with quinine. Sherwood and Meehan had used the same police car in which the heroin was found on the previous day, November 5, 1968. They had checked it in at 4 p.m. on that day. At that time Sherwood had searched under the rear seat of his cruiser before going home. There was no glassine bag, nor were there any other objects under the seat. When Sherwood found the bag of white powder he had pulled the seat forward but had not removed it. He had not removed the seat in his search on the previous day, but he had pulled the seat forward, exposing the entire floor under it, to examine the exposed area for various objects. During his examination on November 5, 1968, Sherwood had found nothing. The cruiser in which the bag of heroin was found was regularly assigned to Sherwood and Meehan, and these officers had used this car regularly from mid-August until November 6, the day of the defendant's arrest. The cruiser was parked outside at police headquarters, with the doors unlocked, when Sherwood left it on November 5, 1968, at 4 p.m. Sherwood found the car in the same position and condition on November 6, 1968, at 9 a.m. The keys are kept on a board at the detective division. No policeman would use the car at night, and this cruiser had not been used by anybody else after Sherwood checked it out on the evening of November 5 until he took it on the morning of November 6. There had been no other passengers in the rear seat of this car between 9 a.m. and 2 p.m. on November 6.

The defendant was searched three to five minutes after his arrival at police headquarters. A torn piece of United States currency and a rubber band were found in the possession of the defendant when he was searched. Narcotics users employ a piece of torn currency as a collar to tighten the fit of the needle to the syringe. The torn currency and the rubber band were items of narcotics paraphernalia. The defendant was arrested and informed of his rights under the constitution before he was searched. He knew that Britt used heroin and he knew that Edmonds had possession of narcotics paraphernalia at least from the time the police cruiser drew alongside the Johns car.

Prior to the commencement of the trial, the defendant moved to suppress the bag of heroin or any evidence relating to it. This motion was withdrawn on the stipulation that the right to object to this evidence would be preserved until the time of trial. Subsequent to the testimony of Sherwood and Meehan, the defendant raised this objection on the ground that the testimony of these officers failed to establish that they had probable cause to arrest the defendant, and therefore any evidence found while he was in custody was the result of an illegal search and inadmissible. The court ruled that the officers had probable cause to arrest the defendant at Main and Morgan Streets and that the finding of the bag of heroin was not the result of an illegal search. The defendant duly excepted to this ruling. There can be no doubt that, upon seeing the syringe in Edmonds' hands held up above the back of the front seat as if it had been passed to Edmonds, the police officers had not only the right but the duty to investigate the unusual and suspicious behavior of the occupants of the car. This is so whether or not there

was probable cause to arrest the defendant. *Terry* v. *Ohio,* 392 U.S. 1, 22, 88 S. Ct. 1868, 20 L. Ed. 2d 889; *State* v. *Sweeney,* 157 Conn. 485, 490, 255 A.2d 622; *State* v. *Williams,* 157 Conn. 114, 118, 249 A.2d 245; *White* v. *United States,* 222 A.2d 843, 845 (D.C. App.).

Section 6-49 of the General Statutes authorizes police officers to arrest without warrant when the person is "taken or apprehended in the act" of committing a criminal offense. A person is lawfully "taken or apprehended in the act" if the circumstances observed by the officer preceding the arrest, viewed in the light of common knowledge and his own training and experience, gave him probable cause to believe that a crime was being or had just been committed. *State* v. *DelVecchio,* 149 Conn. 567, 575, 182 A.2d 402. The amount of evidence necessary to furnish probable cause for an arrest without a warrant is to be measured by the facts of the particular case, and it need not be evidence sufficient to convict. *Wong Sun* v. *United States,* 371 U.S. 471, 479, 83 S. Ct. 407, 9 L. Ed. 2d 441; *State* v. *Sweeney,* supra, 488; *State* v. *Towles,* 155 Conn. 516, 520, 235 A.2d 639; *State* v. *Elliott,* 153 Conn. 147, 152, 215 A.2d 108. Probable cause for an arrest and an incidental search or seizure may exist even though the evidence would not be sufficient to convict. *Brinegar* v. *United States,* 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L. Ed. 1879; *State* v. *Keeby,* 159 Conn. 201, 207, 268 A.2d 652.

In the present case, the officers observed before the arrest: (1) Edmonds holding a syringe which appeared to the officers as if it had been passed to him from the front seat; (2) the defendant turning and saying something to Edmonds just as the police made their presence known, and Edmonds bending

down as the police cruiser drew abreast of the Johns car; (3) Britt, a known narcotics addict, sitting in the right rear seat of the car; and (4) on the floor of the rear seat, between Edmonds' feet and the seat, a syringe with a needle attached to it of the type used by narcotics addicts for injecting heroin into a vein. It was reasonable for the police to assume that the defendant was urging Edmonds to conceal or dispose of the syringe. This is not a case where the defendant was merely associating with a known narcotics addict. *Sibron* v. *State,* 392 U.S. 40, 88 S. Ct. 1889, 20 L. Ed. 2d 917. Nor is it a situation where the defendant occupied the car as a passive and non-participating individual. *United States* v. *Di Re,* 332 U.S. 581, 68 S. Ct. 222, 92 L. Ed. 210. Under these circumstances, there was probable cause for an arrest and an incidental search or seizure. The syringe, which was in full view when the police officer opened the rear door of the Johns car, was properly seized. *State* v. *Allen,* 155 Conn. 385, 393, 232 A.2d 315. The search of the car, which produced the metal cap with the soot on it, known as a cooker, and the cotton pledget in it, in the rear seat ashtray, was valid. There was probable cause to search the car for narcotics, and the warrantless search of the car was justified. *Chambers* v. *Maroney,* 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419. The conclusion of the trial court that there was probable cause for the arrest of the defendant was correct, and his motion to suppress the bag of heroin, the torn currency and the rubber band was properly denied.

The defendant claims that the evidence was not sufficient, beyond a reasonable doubt, to sustain the conviction. To determine this question it is necessary to review the evidence which has been printed

in the appendices to the briefs. Practice Book § 644; *State* v. *Moreno,* 156 Conn. 233, 236, 240 A.2d 871. For this purpose the finding, except for its application to the ruling on evidence, is superfluous. *State* v. *Carroll,* 152 Conn. 703, 204 A.2d 412; *State* v. *Pundy,* 147 Conn. 7, 8, 156 A.2d 193; *State* v. *Bill,* 146 Conn. 693, 694, 155 A.2d 752; Maltbie, Conn. App. Proc. § 213; see also *State* v. *Foord,* 142 Conn. 285, 286, 113 A.2d 591; *State* v. *Malm,* 142 Conn. 113, 115, 111 A.2d 685. Since, however, the finding of subordinate facts already recited clearly and accurately summarizes the evidence printed in the appendices to the briefs, a repetition of all of it is unnecessary.

A person is guilty of conspiracy if he "combines, confederates or agrees with another or others to accomplish any unlawful object by lawful means, or any lawful object by unlawful means, or any unlawful object by unlawful means" and does any act in furtherance of such a conspiracy. General Statutes § 54-197; *State* v. *DiBella,* 157 Conn. 330, 338, 254 A.2d 477. The essence of the offense of conspiracy is an unlawful combination and the act done in pursuance thereof, not the accomplishment of the conspiracy whether lawful or unlawful. *State* v. *Devine,* 149 Conn. 640, 647, 183 A.2d 612; *State* v. *Hayes,* 127 Conn. 543, 588, 18 A.2d 895.

The gist of the offense charged in the instant case was the agreement or mutual understanding by the defendant and Edmonds to violate the act relating to the possession of narcotics. There was no need to prove a formal agreement between the defendant and Edmonds. It was enough if they knowingly engaged in a mutual plan to do a forbidden act. *State* v. *Rich,* 129 Conn. 537, 540, 29 A.2d 771; *State* v. *Kemp,* 126 Conn. 60, 79, 9 A.2d 63.

Conspiracy can seldom be proved by direct evidence. It may be inferred from the activities of the accused persons. *State* v. *Faillace,* 134 Conn. 181, 185, 56 A.2d 167. It is only in rare instances that conspiracy may be established by proof of an express agreement to unite to accomplish an unlawful purpose. The combination or confederation may be proved by circumstantial evidence, that is, by proof of the separate acts of the individuals accused and by proof of circumstances from which the illegal confederation may be inferred. *State* v. *Gerich,* 138 Conn. 292, 297, 83 A.2d 488.

From the evidence produced by the state, the trial court was entitled to draw certain inferences. When Edmonds was observed holding the syringe above the back of the front seat, it appeared as if it had been passed to him. Johns was driving the car, and the defendant was in the front seat next to him. It is a permissible inference that someone in the front seat passed the syringe to Edmonds and that the defendant, upon seeing the police officers, warned Edmonds to conceal the syringe. Edmonds' actions indicated a mutual plan or understanding to conceal something. The presence in the rear seat ashtray of a soot-covered bottle cap or cooker, with a cotton pledget, the possession of a type of syringe used by narcotics addicts, the finding of traces of heroin on the cap and the cotton pledget and of quinine on the syringe, clearly pointed to the probable presence of illegal narcotics. The conduct of the defendant on the way to the police station was cogent evidence that he hid the glassine bag containing heroin under the seat. A cotton pledget found in the pocket of Edmonds when he was searched, and the torn currency and the rubber band in the pocket of the defendant are further evidence of their

knowledge of the presence of heroin and of their familiarity with paraphernalia for its use. Whether the defendant acquired the packet of heroin from Edmonds or how it came into his possession is not important. The separate acts of the defendant and Edmonds, including their obvious efforts to conceal evidence, considered with all the surrounding circumstances, indicate beyond a reasonable doubt that both of them knew of the presence of the heroin and the narcotics paraphernalia and that there existed between them a mutual plan or understanding and a common objective to possess heroin.

The conclusion of the trial court that the defendant was guilty of conspiring with Edmonds to possess heroin in violation of the statute relating to the possession of narcotics cannot be disturbed.

There is no error.

In this opinion the other judges concurred.