STATE OF CONNECTICUT *v*. RALPH PENLAND

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, JS.

Argued October 19, 1977—decision released January 3, 1978

*Walter H. Scanlon,* assistant state's attorney, for the appellant (state).

*Raymond J. Quinn, Jr.,* public defender, for the appellee (defendant).

SPEZIALE, J. The sole issue raised in this appeal by the state is whether the court erred in granting the defendant's motion to suppress certain evidence on grounds that the defendant's arrest and the search incident to that arrest were illegal.

Ralph Penland was charged with possession of narcotics, heroin and methadone, in violation of General Statutes § 19-481 (a). The evidence of the

crime was seized in a warrantless search of the automobile in which Penland was a passenger, after a warrantless arrest of Penland and his companion. After an evidentiary hearing on the defendant's motion to suppress the seized evidence, the motion was granted (*Levine, J.*), and a subsequent motion to dismiss the case was also granted (*O'Brien, J.*), because the state conceded that the action could not be maintained without the evidence suppressed.

The crucial question here is whether there was probable cause for the arrest. It is an established rule that a properly conducted warrantless search incident to a lawful arrest is not illegal. *State* v. *Cobuzzi,* 161 Conn. 371, 373, 288 A.2d 439 (1971), cert. denied, 404 U.S. 1017, 92 S. Ct. 677, 30 L. Ed. 2d 664; *State* v. *Collins,* 150 Conn. 488, 492, 191 A.2d 253 (1963); 4 Wharton, Criminal Evidence § 725 (13th Ed.). In order for the search to be legal, however, the arrest itself must be valid. *State* v. *Cobuzzi,* supra, 375; 4 Wharton, loc. cit. Section 6-49 of the General Statutes authorizes a police officer to arrest, without a warrant, "any person who such officer has reasonable grounds to believe has committed or is committing a felony." "Reasonable grounds" is to be equated with probable cause. *State* v. *Cobuzzi,* supra, 376; *State* v. *Wilson,* 153 Conn. 39, 41, 212 A.2d 75 (1965). Probable cause means more than mere suspicion. There must be facts and circumstances within the officer's knowledge, and of which he has trustworthy information, sufficient to justify the belief of a reasonable person that an offense has been or is being committed. *Beck* v. *Ohio,* 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964); *Brinegar* v. *United States,* 338 U.S. 160, 175–76, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949). There is often a fine line between

mere suspicion and probable cause, and "[t]hat line necessarily must be drawn by an act of judgment formed in the light of the particular situation and with account taken of all the circumstances." *Brinegar* v. *United States,* supra, 176.

Whether there was probable cause for Penland's arrest can only be determined through scrutiny of the circumstances leading up to the arrest. Detective Thomas Hunt, the arresting officer, was the sole witness at the hearing on the motion to suppress. Although he testified that he was acting on a tip from an informant, the informant was not named and did not appear. Thus, the credibility of Hunt was a crucial factor in evaluating the issue of probable cause.

The court found that on November 30, 1974, Hunt, an undercover narcotics agent, received a telephone call from "an alleged reliable informant." Hunt testified that the informant had in the past supplied him with information that resulted in two arrests and convictions. The informant told Hunt that he was present in Tony's Restaurant, a bar in Naugatuck, and that he had observed Penland and one Robert Babarik in possession of a quantity of heroin, that he had seen them sell two bags of heroin to another man, and that he had overheard them say they would be leaving in a few minutes. The informant also told Hunt that Penland and Babarik were operating a blue Dodge Dart. Hunt called two other detectives and they went to the area of Tony's Restaurant. They arrived roughly five minutes after receiving the telephone call and observed Penland and Babarik leaving the bar together. Hunt knew Penland and Babarik through previous narcotics investigations. He saw them

cross the street and enter a blue Dodge Dart. At this point Hunt and the other detectives pulled over to the defendant's vehicle and arrested both of them for possession of narcotics while in the bar. Then, the immediate area around Penland and Babarik was searched; narcotics paraphernalia were found under the front dashboard, within arm's reach of the men, and a bottle of methadone, which Hunt recognized as contraband, was in open view on the back seat. No packaged quantity of heroin was found on the persons of Babarik or Penland. Contradicting his prior testimony, Hunt later testified that he was not arresting them for a transaction that had transpired at Tony's Restaurant.

The court concluded that there were no underlying circumstances from which it could determine that the informant was credible or his information reliable. See *Spinelli* v. *United States,* 393 U.S. 410, 413, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *Aguilar* v. *Texas,* 378 U.S. 108, 114, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964). It further concluded that the arrests of Penland and Babarik were made without probable cause and that the search of the vehicle was therefore illegal, requiring suppression of the evidence secured by the search. See *Beck* v. *Ohio,* supra, 91.

The state contends that Hunt "could most reasonably conclude that the informant was credible because the informant had given information in the past that had led to two arrests and convictions for possession and sale of heroin." The simple answer is that the trial court did not accord any weight to Hunt's testimony as to the credibility or reliability of the informant. The trier of the facts determines with finality the credibility of witnesses and the

weight to be accorded their testimony. "We cannot retry the facts or pass upon the credibility of the witnesses." *Johnson* v. *Flammia,* 169 Conn. 491, 497, 363 A.2d 1048 (1975).

To support the claim that there was probable cause for the arrest, there was only Hunt's testimony that the informant was reliable and Hunt's unsupported statements that he himself believed Penland and Babarik were in possession of narcotics. As noted, Hunt's credibility was a crucial factor in evaluating the issue of probable cause. A review of Hunt's testimony, as set forth in the appendix to the defendant's brief, reveals numerous contradictory statements. For example, Hunt initially testified that the arrest was made for possession of narcotics in the bar. He later stated that it was for possession of narcotics at the time of the arrest, and that he was not arresting them for a transaction that occurred in Tony's Restaurant. At the hearing, Hunt testified that Penland and Babarik were first seen when they were leaving the bar, yet the police report states that they were initially observed in the car. Although those may appear to be minor inconsistencies, when viewed in context they tend to undermine Hunt's assertion that he had probable cause for the arrest. For instance, the informant's tip described a transaction that took place in the bar. Yet Hunt testified that the arrest was not based on this transaction. He asserted that the arrest was for possession of narcotics *after* the defendants left the bar, but he was unable to give any clear reasons for believing that they were in possession of narcotics *at that time,* except that it was a reasonable inference to be drawn from the tip regarding the transaction in the bar. Further, it is curious that although he stated

that he believed Babarik and Penland were in possession of narcotics when he saw them leaving the bar, he waited until they had crossed the street and entered their car before making the arrest.

The court was assured by Hunt that his informant was reliable; however, the court found that Hunt received a telephone call from "an *alleged* reliable informant." (Emphasis added.) It further found: "It is *alleged* that this informant had in the past supplied information to Detective Hunt that led to two arrests and convictions, one for possession of narcotics and one for sale of narcotics." (Emphasis added.) The only underlying circumstances corroborating the informant's information were that Penland and Babarik left the bar shortly after the call was made and that they were driving a blue Dodge Dart, both apparently innocent activities. See *Spinelli* v. *United States,* supra, 414. As noted, Hunt clearly failed to convince the court that his informant was credible or his information reliable. Hunt *himself* saw nothing which would support a belief that Penland and Babarik were in possession of narcotics. Therefore, we hold that the court did not err in concluding that the arrest was made without probable cause and that the search was illegal. The evidence was properly suppressed.

There is no error.

In this opinion the other judges concurred.