[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The court as outlined in CV-98-04 12952 rendered its decision for the trial of that case and the present case which were tried together per order of court and with agreement of the parties. (Silbert, J.). Further that any findings of fact contained in the memorandum of Incident One applies to Incident Two.
This case as pointed out is Incident Two with the same parties as Incident One.
Incident Two occurred on June 5, 1997, four months after Incident One.
Incident Two alleges inter alia the same grounds of negligence with the same answers and special defenses raised in the February 4 Incident One.
As earlier discussed McNeil was an experienced operator of a scooter having used it many times to board and leave buses to attend to her position as a crossing guard at Vincent Mauro School. Bianchi, the bus operator in Incident One, testified that McNeil had used the bus on prior occasions without incident and was well aware of its operation.
McNeil alleges that operator Sanchez while lowering the lift pushed the wrong button to stow which caused the flap to strike her toe. Sanchez testified that there are 3 buttons for the lift: Power switch; next is CT Page 9080 control switch and next is stow switch. The control switch raises and lowers the lift. The stow switch controls the movement of the front flap. (See Exhibit 10). McNeil relies on the report filed by Sanchez. (Exhibit 12).[1]
The defendants argued in their post trial brief Sanchez testified that once the process was started to lower the lift that in order to change the position to stow, it would require two separate actions requiring both hands. Sanchez testified he did not deviate from his normal routine in operating the lift on June 5, 1997. His explanation for his report to the contrary was prepared after he had become excited by McNeil's screaming suddenly.
The defense further presented the testimony of Michael Kaufman (Kaufman), senior claims manager, who like operators Bianchi and Sanchez all testified that the lift flap worked together with the operator's control button and once the control button was placed in the lower position the lift would go to floor level of the bus down to the ground and once the lift made contact with the ground the flap would go out away from the bus without further involvement of the operator of the controls.
The plaintiff argues that the court should give more credence to the report of Sanchez (Exhibit 12) than what he now testified to regarding his operation of the lift on June 5, 1997.
Plaintiff argues under State v. Penland, 174 Conn. 153 (1978) the final credibility of witnesses rests with the trier of facts and that there is sufficient evidence in the record to support a reasonable inference that Sanchez was negligent in his operation of the controls of the lift.
All the defense witnesses testified that the stow switch would not activate until the end of the cycle. Sanchez testified that the operation of the stow mode does not cause the flap to come towards the passenger. Sanchez's explanation for his report was that he became excited when McNeil screamed.
The plaintiff offers no contrary proof of the lift operation nor that the lift was in any way defective.
An examination of Defendant's 6 and 10A through 10H physically supports that the flap could not be the proximate cause for the injuries of either February 4, 1997 or June 5, 1997. The court concludes that the plaintiff was more negligent by not placing her feet within the scooter.
Accordingly, judgment is entered in favor of the defendant as to the CT Page 9081 incident of June 5, 1997.
 ___________________ FRANK S. MEADOW JUDGE TRIAL REFEREE