**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Leonard F. BOEKELMAN, Jr.,
Defendant-Appellant.**

No. 78–1063.

United States Court of Appeals,
Ninth Circuit.

Feb. 22, 1979.

Kevin P. O'Connell, Portland, Or., for defendant-appellant.

Charles H. Turner, Asst. U. S. Atty., Portland, Or., for plaintiff-appellee.

Before GOODWIN and ANDERSON, Circuit Judges, and JAMESON,* District Judge.

J. BLAINE ANDERSON, Circuit Judge:

The defendant, Boekelman, was charged with two counts of transporting stolen securities in violation of 18 U.S.C. §§ 2 and 2314. The first count charged defendant with transporting a $50,000 cashier's check (issued by the Barclay Bank in Beverly Hills, California, hereinafter "Barclay") from California to Oregon. The second count charged defendant with transporting nine (9) $10,000 cashier's checks (also issued by Barclay) from California to Oregon. A six-day jury trial was held and defendant was convicted on both counts. Boekelman appeals, claiming that one of the jury instructions was improper, and claiming that the evidence was insufficient to support his conviction. We find no reversible error and affirm Boekelman's conviction.

Jurisdiction of the district court was based on 18 U.S.C. § 3231. Jurisdiction of this court is proper under 28 U.S.C. § 1291.

## FACTS

The defendant and two other individuals formed General Fund, Inc. (hereinafter "General"), an Oregon corporation, in 1975. In February 1976, Boekelman became sole owner of General. On January 5, 1976, defendant opened a checking and savings account for General at the Barclay Bank with opening deposits of $75 and $25, respectively. No further deposits were made by defendant. On January 28, 1976, Guest Informant, Inc. (hereinafter "Guest") also established a savings account at Barclay with an opening deposit of $100,000. Guest, an advertising publisher, was completely unrelated to defendant or any of the corporations with which he was involved. Due to a clerical error by Barclay employees, General's and Guest's savings accounts were assigned the same account number, 56007. No computer card was ever prepared by Barclay for Guest's account. This resulted in Guest's opening deposit of $100,000 being credited to General's account, and a subsequent deposit of $50,000 by Guest also being credited to General's account.

When defendant became the sole owner of General, he employed Roy Sender, an accountant, to establish a set of books for the company. Boekelman supplied Sender with various papers to accomplish this task, one being a bank account verification statement sent by Barclay to defendant at defendant's Eugene, Oregon, address. This verification had been sent by Barclay on March 8, 1976, and showed a savings account balance of $150,025. Sender verified this balance as soon as he discovered the letter and informed the defendant of the balance. At Boekelman's request, Sender verified the balance again on April 22, 1976.

On several occasions Sender asked Boekelman where the money had come from which was in the Barclay account. The defendant responded once that it had come from heaven, and otherwise always responded that it came from investors. After he learned of the F.B.I. investigation, Boekelman changed his story and told Sender that the money had come from Shim Shad Ahmad, a Pakistani national who was a business associate of Boekelman. At trial, Boekelman testified that he thought that Ahmad had deposited the money into the Barclay account. In turn, Ahmad testified that he thought his friend, Humayun Nazir, from Pakistan, had deposited the money. Neither Ahmad nor Nazir ever made any deposit into General's Barclay account.

On April 5, 1976, defendant formed Atlantic Financial Associates (hereinafter "Atlantic"). Atlantic was established to conduct Boekelman's personal affairs and Sender was to act as manager for the corporation. On April 30, 1976, Sender and defendant traveled to California and withdrew $50,000 from the Barclay savings account by way of a cashier's check payable

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

to Atlantic. Defendant directed Sender to deposit the check in Atlantic's Oregon bank account. Subsequently, on May 6, 1976, this money was withdrawn from the Oregon account in the form of cash and to purchase other cashier's checks. On May 7, 1976, defendant directed Sender to withdraw an additional $90,000 from the Barclay account in the form of nine cashier's checks payable to defendant. Sender eventually gave the nine checks to defendant and defendant transported the checks back to Oregon where he cashed them.

## QUESTIONS PRESENTED

Boekelman raises two questions on appeal. First, he challenges an instruction given by the district court on false exculpatory statements. And, second, Boekelman claims the evidence was insufficient to support his conviction.

## DISCUSSION

### *Instruction*

Boekelman argues that the instruction on false exculpatory statements [1] was reversible error because it implied that the defendant had the burden of proving his innocence, allowed the jury to consider the statements as evidence of guilt rather than as evidence of consciousness of guilt, and allowed the jury to consider statements made by other defense witnesses rather than just those statements made by the defendant.

■ This court has approved the use of the Devitt & Blackmar instruction on false exculpatory statements,[2] *United States v. Wood*, 550 F.2d 435, 443 (9th Cir. 1976). The instruction in question appears to be a variation of this. While it is generally advisable for a trial judge to follow previously approved instructions, they need not be repeated word for word. We acknowledge that we do not favor the instruction given in the present case. Nonetheless, we find that it was not reversible error.

■ On appeal, the adequacy of jury instructions is not determined by the giving of any one instruction, but by examining the instructions as a whole. *United States v. Lee*, 589 F.2d 980, 985 (9th Cir. 1979); *United States v. Kaplan*, 554 F.2d 958, 968 (9th Cir. 1977), *cert. denied*, 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (and cases cited therein).

■ According to Boekelman, the challenged instruction improperly implied that he had the burden of proving his innocence. However, reading the instructions as a whole, there is no doubt but that the jury understood that the prosecution bore the burden of proving the defendant guilty beyond a reasonable doubt. The trial judge repeatedly explained that the burden of proof beyond a reasonable doubt was on the prosecution. We find that the instructions as a whole fairly and accurately described and placed the burden of proof on the prosecution. *See United States v. Clabaugh*, 589 F.2d 1019, 1022 (9th Cir. 1979).

■ False exculpatory statements may only be considered by the jury as circumstantial evidence pointing to a consciousness of guilt, rather than as evidence of guilt. *See* 1 E. Devitt and C. Blackmar, *Federal Jury Practice and Instructions*, 3rd ed. 1977, § 15.12. Relying on *United States v. Di Stefano*, 555 F.2d 1094 (2d Cir. 1977), Boekelman claims that the failure to include the word "consciousness" in the instruction was

---

1. The challenged portion of the instructions reads as follows:

 "If you are satisfied from the evidence that false statements in the case were made by the Defendant or on his behalf at his instigation, then you have the right to take such statements into consideration together with all the other circumstances of the case to determine whether or not the Defendant's conduct has been satisfactorily explained by him upon the theory of his innocence. You also have the right to consider such statements if you find them to be false statements in explanation or defense as tending in themselves to show guilt. Of course, you are the sole and exclusive judges of who is or who is not telling the truth in this case."
 R.T. 851–852.

2. *See* 1 E. Devitt and C. Blackmar, *Federal Jury Practice and Instructions*, 2d ed. 1970, § 11.20; and 1 E. Devitt and C. Blackmar, *Federal Jury Practice and Instructions*, 3rd ed. 1977, § 15.12.

reversible error. However, *Di Stefano* is readily distinguishable from the present case. In *Di Stefano* the instruction specifically pointed out the defendant's allegedly false exculpatory statements. 555 F.2d at 1104. The court found that the instruction had improperly stressed the importance of the statements. 555 F.2d at 1104, n.9. Additionally, the court limited its holding to the facts of the *Di Stefano* case where the evidence of guilt was weak.[3] 555 F.2d at 1104. We recognize that a proper instruction on false exculpatory statements should be limited to consciousness of guilt; nonetheless, we refuse to attach a talismanic importance to the word by reversing in the present case where the jury was otherwise properly instructed, the evidence of guilt was not weak, and the trial judge did not improperly stress any statements made by the defendant.

■ On appeal, Boekelman contends that the instruction was too broad because it allowed the jury to consider statements made by others. At trial, Boekelman's counsel objected to the instruction, claiming that it was not broad enough and that it should apply to all witnesses. (R.T. 861–862) The one case cited by Boekelman in support of this argument, *Petschl v. United States*, 369 F.2d 769 (8th Cir. 1966), is not controlling. In *Petschl*, the instruction applied to "defendant or his witnesses," whereas, the instruction in Boekelman's case applied to statements made by the defendant "or on his behalf at his instigation." Additionally, although the court in *Petschl* disapproved of the instruction, it did not find it reversible error in the absence of a specific objection, something which was also lacking in the present case. We do not decide when false exculpatory statements made by others besides the defendant may be considered by the jury; we only hold that it was not reversible error to allow the jury to consider statements made on behalf of the defendant at his instigation on the facts of this case. *Cf. Fox v. United States*, 381 F.2d 125, 129 (9th Cir. 1967);

*Holt v. United States*, 272 F.2d 272, 275–276 (9th Cir. 1959), *quoting Wilson v. United States*, 162 U.S. 613, 620–621, 16 S.Ct. 895, 40 L.Ed. 1090 (1896).

### Sufficiency of the Evidence

■ Boekelman contends that the evidence was insufficient to prove that the securities were stolen, converted or taken by fraud and that the defendant knew the securities were stolen, converted or taken by fraud. This issue requires little discussion. Two versions of what occurred were presented to the jury, one by the government, one by the defendant. After reviewing the evidence, we have no difficulty in concluding that the evidence, admittedly circumstantial, was sufficient to support a rational finding by the jury that the securities were stolen, converted or taken by fraud, and that Boekelman had the necessary knowledge that the securities were so acquired. This was a pure jury question, which, as the verdict indicates, was resolved against the defendant. We therefore conclude that the evidence was sufficient to support the jury's conclusion that the defendant was guilty beyond a reasonable doubt.

### CONCLUSION

For the reasons stated in this memorandum, the conviction of the defendant Boekelman is

AFFIRMED.

---

**3.** *Cf. United States v. Morales*, 577 F.2d 769, 778–779 (2d Cir. 1978) (Anderson, J., dissenting opinion) (where the *Di Stefano* case was explained and distinguished in the same manner).