952 F.2d 408
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas Mitchell ROBERTS, Defendant-Appellant.
 No. 90-50295.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 4, 1991.
Decided Jan. 10, 1992.
 
 Before JAMES R. BROWNING, BOOCHEVER and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Thomas Mitchell Roberts appeals his conviction and sentence, following a jury trial, for conspiracy to possess a controlled substance with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). We affirm both the conviction and the sentence.
 
 BACKGROUND
 
 3
 On May 1, 1989, San Diego police officers stopped a car that had expired vehicle registration tags. When the driver, Annette Downard, could not produce either her driver's license or the vehicle's registration papers, the officers requested a license plate check and learned that the plate had been reported lost or stolen. The officers asked Downard and her two passengers, Calvin Pipkin and Martin Hogrefe, to get out of the car, and then noticed a sawed-off shotgun protruding from underneath the passenger seat. The officers arrested Pipkin and Hogrefe. A search of the two men incident to the arrest revealed narcotics paraphernalia and a controlled substance. When the police advised Downard that they could not release the car to her without some type of identification or registration, she stated that she had a driver's license in Room 306 at the Pacific Terrace Hotel.
 
 
 4
 When the officers and Downard reached the hotel, Downard became extremely nervous and stated that there was a person named Philip Hutchinson in the hotel room who was armed with a loaded gun and that there were drugs in the room. The hotel's records indicated that Room 306 as well as Room 321 were registered to Mary Miller and Room 321 was jointly registered to Paul Dolmer. Downard stated that as far as she knew, the people whom she was with in Room 306 had also rented Room 321. She told the police that "Paul Dolmer" was an alias used by Hutchinson, and stated that she was not sure which room Hutchinson was in. During their check of the hotel records, the police learned that a hotel clerk had called Room 306 to inform the occupants that Downard was at the front desk with police officers. At about the same time, they determined that there was an outstanding felony warrant for Hutchinson's arrest.
 
 
 5
 Because the hotel records indicated that "Paul Dolmer" was staying in Room 321, the officers decided to call that room first. Two of the officers arrived at Room 321 just as Thomas Roberts and Mary Miller came out of the room. When he saw the police, Roberts stated that he knew "these people were bad news" because one of them had offered him $100 to switch rooms. The officers entered the room and conducted a cursory search to determine whether anyone else was present. During the brief sweep, they noticed a tray covered with the residue of a white powdery substance. The officers then walked Roberts and Miller backwards to the end of the hall, placed them in chairs, and handcuffed them. Because Roberts did not match the physical description of Hutchinson, they then placed a call to Room 306. In response to the call, Hutchinson and several others emerged from the room. The officers then entered and found several weapons in plain view.
 
 
 6
 Approximately twenty minutes after Miller and Roberts had left Room 321, Miller and Hutchinson, who had identified himself as Mr. Dolmer, consented to a further search of both hotel rooms. In the wall safe in Room 306, the officers found manila envelopes containing a white, powdery substance and a large quantity of cash. In the wall safe in Room 321, they found a black zippered case containing a number of small plastic bags and two hypodermic syringes. Also in Room 321, the officers found a wallet that contained identification belonging to Mary Miller and a white paper bindle containing a white powdery substance, later determined to be methamphetamine. The officers then placed Roberts, Hutchinson, and the others under arrest. At that time, Roberts waived his Miranda rights and stated that he had observed a yellowish-white powdery substance in Room 306 and that the occupants of Room 306 had approached him in a forceful manner and offered him $150 to $200 to switch rooms. He later stated that Hutchinson had given him and Miller money to rent the two rooms, and that he had received some methamphetamine from Hutchinson.
 
 
 7
 Roberts was indicted by a federal grand jury for conspiracy to possess methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Prior to trial, Roberts filed motions to suppress his post-arrest statements and the evidence found during the warrantless search of Room 321. The district court denied the motions. At the trial, Annette Downard testified for the government under a grant of immunity. She stated that she had heard Hutchinson and Roberts discussing the distribution of methamphetamine, and had seen the two men "cutting", weighing, and packaging the drug. The jury convicted Roberts on both counts charged in the indictment.
 
 
 8
 Because more than 100 grams of methamphetamine were found in Room 306, the court determined that the statutory mandatory minimum requirement of five years incarceration applied. 21 U.S.C. § 841(b)(1)(B). The presentence report used the amount of methamphetamine involved (approximately 169 grams) to assign Roberts a base offense level under the Sentencing Guidelines of 22, with a two-level upward adjustment for obstruction of justice based on Roberts' failure to appear as ordered at a previously scheduled pretrial hearing. Based on Roberts' total offense level of 24 and criminal history category of VI, the Sentencing Guidelines range for imprisonment was 100 to 125 months. Prior to trial, however, the government had filed an information stating its intent to seek an enhanced sentence based on Roberts' prior California felony conviction for possession of methamphetamine.[1] The district court determined that Roberts' prior felony conviction raised the statutory mandatory minimum prison term to ten years, or 120 months. Id. Accordingly, the court sentenced Roberts to ten years in prison, followed by a five-year term of supervised release. The court later entered a nunc pro tunc order increasing the supervised release term to eight years.
 
 DISCUSSION
 I. Warrantless Search and Detention
 
 9
 Roberts argues that the police lacked reasonable suspicion to justify a "protective sweep" of Room 321 and that the warrantless search conducted immediately after Roberts and Miller emerged from the room was therefore unlawful.[2] A search warrant is not required, however, when the police possess an arrest warrant and have reason to believe that the individual named in the warrant is present in the premises to be searched. United States v. Underwood, 717 F.2d 482, 484-86 (9th Cir.1983) (en banc), cert. denied, 465 U.S. 1036, 104 S.Ct. 1309 (1984). The officers in this case had a warrant for Hutchinson's arrest, and Annette Downard's statements and the hotel records gave them good reason to believe that Hutchinson would be found in Room 321. In addition, they knew that Hutchinson was armed and that the occupants of Room 321 had been alerted to the presence of police officers. Under the circumstances, a quick search of Room 321 in order to determine whether Hutchinson was present and had remained in the room was justified.
 
 
 10
 Roberts further argues that by handcuffing him to a chair during the sweep of Room 306 and the subsequent consensual searches of both hotel rooms, the police officers effected an arrest, for which they lacked probable cause. He maintains that his post-arrest statements were tainted by his illegal arrest, and should therefore have been suppressed. Because we find that the detention of Roberts did not rise to the level of an arrest, we do not reach the suppression issue.
 
 
 11
 It is established law that a police officer may initiate a brief investigatory detention based on a reasonable suspicion that the individual detained has committed or is in the process of committing a crime. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 (1968). In determining whether and at what point a purported detention has ripened into an arrest, we must consider the totality of the circumstances. United States v. Baron, 860 F.2d 911, 914 (9th Cir.1988) (footnote and citations omitted), cert. denied, 490 U.S. 1040, 109 S.Ct. 1944 (1989). The use of handcuffs or some other method of restraint does not automatically transform a Terry stop into an arrest. United States v. Bautista, 684 F.2d 1286, 1289-90 (9th Cir.1982), cert. denied, 459 U.S. 1211, 103 S.Ct. 1206 (1983). Police may use reasonable force during an investigative detention where they have reason to believe that the suspect is armed and dangerous. United States v. Del Vizo, 918 F.2d 821, 825 (9th Cir.1990); United States v. Robertson, 833 F.2d 777, 782 (9th Cir.1987). "Nor must investigative stops always be terminated within a couple of minutes." Bautista, 684 F.2d at 1290. The permissible duration of an investigative stop depends on the length of time required for police to conduct an adequate investigation that is " 'reasonably related in scope to the justification for [its] initiation,' " id. (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 881, 95 S.Ct. 2574, 2580 (1975)), and on whether the police diligently pursued their investigation during the detention, United States v. Holzman, 871 F.2d 1496, 1501 (9th Cir.1989).
 
 
 12
 In this case, Roberts was detained no longer than was reasonably necessary for the officers to secure the two hotel rooms and to determine by consensual search whether the rooms were in fact the site of criminal activity. Similarly, the use of handcuffs to restrain Roberts was a legitimate precautionary measure in light of the fact that the officers were dealing with an unknown number of suspects and had been told that one of those suspects was armed. Accordingly, we conclude that the detention of Roberts was reasonable under the circumstances and did not constitute an arrest.
 
 II. Trial Rulings
 
 13
 Roberts contends that two of the rulings made by the district court during the trial constitute reversible error. First, he argues that the court improperly admitted testimony regarding a conversation that he had with the general manager of the Pacific Terrace Hotel approximately four weeks after his arrest. Second, he challenges the court's failure to give the lesser included offense instruction requested by the defense. Neither of these rulings constitutes a ground for reversal of Roberts' conviction.
 
 
 14
 At Roberts' trial, the general manager of the Pacific Terrace Hotel, Regan, testified over objection that Roberts had returned to the hotel approximately four weeks after his arrest. According to Regan, Roberts told him that he had been involved in the case as an undercover agent for the DEA, that some of his identification had been left at the hotel, that the identification would endanger his status as an undercover agent, and that it was essential that it be returned. The district court ruled that Regan's testimony was admissible under Federal Rule of Evidence 404(b), which provides:
 
 
 15
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 16
 Fed.R.Evid. 404(b).
 
 
 17
 We review evidentiary rulings for abuse of discretion. United States v. Catabran, 836 F.2d 453 (9th Cir.1988). The government argues that the statements were admissible as false exculpatory statements. We have repeatedly held that false exculpatory statements may be admissible as circumstantial evidence tending to show consciousness of guilt. United States v. Candoli, 870 F.2d 496, 508 (9th Cir.1989); United States v. Hackett, 638 F.2d 1179, 1186-87 (9th Cir.1980), cert. denied, 450 U.S. 1001, 101 S.Ct. 1709 (1981); United States v. Boekelman, 594 F.2d 1238, 1240 (9th Cir.1978); United States v. Wood, 550 F.2d 435, 442-43 (9th Cir.1977). Roberts offers a number of arguments against the admissibility of the statements, including remoteness in time. We find all of those arguments without merit. Accordingly, we conclude that the district court did not abuse its discretion by admitting Regan's testimony.
 
 
 18
 The second ruling challenged is the district court's refusal to give a jury instruction regarding lesser included offenses. The indictment charging Roberts with conspiracy and possession offenses listed the quantity of methamphetamine involved as 180 grams. At the close of trial, the defense submitted a proposed jury instruction regarding the lesser included offenses of possession of less than 100 grams of methamphetamine with intent to distribute and conspiracy to possess less than 100 grams of methamphetamine. We conclude that the trial court properly rejected these instructions.
 
 
 19
 In order to demonstrate that he is entitled to a lesser included offense instruction, a defendant "must (1) identify the lesser included offense, and (2) demonstrate that a rational jury could find him guilty of the lesser included offense but not the greater." United States v. Walker, 915 F.2d 480, 485 (9th Cir.1990) (citation omitted). The quantity of controlled substance involved in a particular violation of the statute under which Roberts was charged is relevant only to sentencing and thus does not constitute an element of a lesser included offense. 42 U.S.C. § 841(b)(1)(B)(viii) (providing for an enhanced sentence for violations involving "100 grams or more of a mixture or substance containing a detectable amount of methamphetamine"). Moreover, the jury that convicted Roberts was not told that any particular amount of methamphetamine constituted an element of the offenses charged, but rather was instructed regarding the elements of possession and conspiracy generally. Accordingly, Roberts has failed to demonstrate his entitlement to a lesser included offense instruction.
 
 III. Sentencing
 
 20
 Finally, Roberts raises two objections to the sentence imposed by the district court. First, he claims that the government's failure to file an accurate pretrial information regarding Roberts' prior felony conviction precluded the court from imposing an enhanced sentence on that ground. We disagree. The information originally filed by the government on December 1, 1989, four days before trial, alleged that in March, 1989, Roberts had been convicted of possession of methamphetamine "for sale". On March 29, 1990, six days before Roberts was sentenced, the government filed an amendment to the information to delete the words "for sale." Under 21 U.S.C. § 851(a)(1), "clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence." Moreover, Roberts admits that he knew about the prior conviction and concedes that the amendment provided no new information that the court did not already possess. The government's error in this case falls squarely within the provision for "clerical mistakes" and does not preclude enhancement of Roberts' sentence.[3]
 
 
 21
 Second, Roberts contends that the district court improperly enhanced his sentence for obstruction of justice. At the conclusion of the pretrial motion hearing on July 28, 1989, the district court ordered Roberts to report for drug testing. When Roberts tested positive for use of methamphetamine while free on bail, the court ordered him to appear, but Roberts failed to do so. He was subsequently seized pursuant to a bench warrant issued by the court. Section 3C1.1 of the Sentencing Guidelines instructs the court to increase the defendant's offense level by two levels "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." Comment 3(e) states that this enhancement applies where a defendant has "willfully fail[ed] to appear, as ordered, for a judicial proceeding." Roberts argues that failure to appear is substantively different from the other examples listed in Comment 3, such as suborning perjury or tampering with evidence, because failure to appear can be viewed as an expression of the defendant's constitutional right not to present any evidence in his defense. We decline to hold that a criminal defendant has a constitutional right to jump bail with impunity. Comment 3 makes no distinction for enhancement purposes between failure to appear and the other listed acts that constitute obstruction of justice. Alternatively, Roberts argues that the enhancement of his sentence for failure to appear constitutes a form of "double counting" specifically proscribed by section 3D1.2 of the Sentencing Guidelines. Because Roberts was sentenced for a narcotics offense, not an obstruction of justice offense, we reject this argument. The enhancement was proper. In any event, we note that regardless of the court's calculations and its applications of the Sentencing Guidelines formulae, the district judge ultimately imposed the minimum sentence permitted by statute--ten years. Given the prior conviction, the court could not have imposed a lesser sentence. Thus, any errors regarding enhancement contained in the court's discussion of the Sentencing Guidelines are of no consequence.
 
 
 22
 Roberts' conviction and sentence are accordingly
 
 
 23
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Roberts was convicted of felony possession of methamphetamine on March 23, 1989, in San Diego County. The presentence report, which was filed on January 30, 1990, noted that Roberts had been charged with felony possession of methamphetamine, but stated that no further information was available regarding that case. The government's information was filed on December 1, 1989, four days before the trial began. At the sentencing hearing on April 5, 1990, Roberts conceded that in light of the information filed by the government, the Probation Department's failure to include his March, 1989, conviction in the presentence report did not prejudice him
 
 
 [2]
 In so arguing, Roberts relies on Maryland v. Buie, 494 U.S. 325, 110 S.Ct. 1093 (1990), which established that the fourth amendment permits a properly limited protective sweep when the searching officers possess reasonable suspicion. We need not decide whether Roberts' reading of Buie is correct, because Buie is clearly inapposite here. The Buie court defined a "protective sweep" as "a quick and limited search of premises, incident to arrest." Id. at 327, 110 S.Ct. at 1094. No arrest occurred prior to the officers' cursory search of Room 321
 
 
 [3]
 Roberts maintains that in any event his prior felony conviction under California law should not qualify as a predicate offense for an enhanced penalty under the federal narcotics statute, because under 21 U.S.C. § 844(a), the offense of which he was convicted, if charged under federal law, would not be a felony unless the government could prove a prior drug conviction. Cf. Taylor v. United States, 495 U.S. 575 (1990) (declining to allow "burglary" to serve as the predicate offense for a sentencing enhancement where the statute was unclear regarding which definition of that crime Congress intended to use). However, the language of 21 U.S.C. § 841 indicates unequivocally that Congress intended to allow defendants convicted under section 841 to receive enhanced sentences "for an offense punishable under this paragraph, or for a felony under any other provision of this subchapter or subchapter II of this chapter or other law of a State ... relating to narcotic drugs...." Id. § 841(b)(1)(B) (emphasis added). The enhancement of Roberts' sentence based on his prior California felony narcotics conviction was therefore proper